MARY CALLERAND *et al.* Defendants in Error, *vs.* BAPTISTE PIOT *et al.* Plaintiffs in Error.

*Opinion filed June 16, 1909—Rehearing denied October 13, 1909.*

1. DEEDS—*what is a sufficient delivery to pass title.* Deeds executed contemporaneously with a will which refers to the deeds as having been executed to the grantor's sons and delivered to a notary to be delivered to the sons at the grantor's death, and which are accepted by the grantees when manual possession is given to them by the notary after the grantor's death, are well delivered and pass title, where there is nothing to show the grantor intended to retain any control over the deeds after delivering them to the notary, though he kept possession of the lands until his death.

2. SAME—*what does not tend to show that grantor intended to retain control over deeds.* Proof that the grantor, at the time he executed a will and certain deeds to his sons, destroyed an earlier will and similar deeds which he had left in the possession of the notary who drew them, does not indicate that the grantor intended to retain control over the second deeds, which he left with the notary. to be delivered to the grantees at the grantor's death, there being no proof as to what arrangement was made with the notary when the earlier deeds were left in his possession.

3. SAME—*what declaration by grantor is not inconsistent with delivery of deeds to third person.* The fact that the grantor, after executing certain deeds to his sons and delivering them to the notary who drew them, to be delivered to the grantees at the grantor's death, made the statement, "None of my folks shall have any of my property while I live; I am going to be boss," is not inconsistent with the theory that the grantor had parted with all control over the deeds, since the grantees could exercise no .acts of ownership over the property until they received their deeds after the grantor's death.

4. SAME—*fact that the notary would have given deeds back to grantor is not material.* The fact that the notary to whom deeds were delivered by the grantor to be delivered to the grantees at the grantor's death, testifies that he would have given the deeds back to the grantor if he had wanted them, as he felt that the grantor had a right to control his property, shows merely the view of the witness, and does not tend to show the grantor did not intend to part with all control over the deeds.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. CHARLES T. MOORE, Judge, presiding.

On April 7, 1908, Mary Callerand and Josephine Boisseau filed their bill in the circuit court of St. Clair county against Baptiste Piot, Emile Piot and others for the partition of certain lands in that county of which John Baptiste Piot was alleged to have been the owner at the time of his death, and to have certain deeds executed by the deceased purporting to convey said lands canceled and set aside as clouds upon the title thereto. The lands of which partition was sought were the lands which were apparently conveyed by the deeds attacked by the bill. Answers and replications were filed and the cause was referred to a master to take the testimony and report the same to the court. Upon a hearing on that report the court entered a decree granting the prayer of the bill, and to review that decree Baptiste Piot and Emile Piot have sued out a writ of error from this court.

John Baptiste Piot died at East St. Louis, Illinois, on September 24, 1907, leaving a will, in and by which he disposed of all his property, unless the land involved in this suit should be determined to be intestate property not conveyed by the deeds above mentioned. He left surviving him as his only heirs, Mary Callerand, Josephine Boisseau and Justine Ward, his daughters; Baptiste Piot and Emile Piot, his sons, and Adele Renard, a grandchild. The will was executed by the deceased at the office of Prosper J. Soucy, a notary public in the city of East St. Louis, on

March 28, 1907, and at the same time Mr. Piot executed two deeds, one conveying lot 220 of the common fields of Cahokia, in St. Clair county, to Baptiste Piot, and the other conveying lot 210 of the common fields of Cahokia, and an additional tract of about ten acres, to Emile Piot. Each deed recited a consideration of one dollar and love and affection. The deed to Baptiste Piot contained the following statement: "This being the same land bequeathed by me to my son Baptiste Piot in my last will and testament." The deed to Emile Piot contained the same statement as to him. Each deed was an ordinary warranty deed, containing no reservation. The third and fourth clauses of the will-executed by the deceased are as follows:

"*Third*—To my son Baptiste Piot I have executed deed and delivered same to P. J. Soucy, of East St. Louis, to be delivered to him upon my death, for the following described property, to-wit: Lot numbered two hundred and twenty (220) of the common fields of Cahokia.

"*Fourth*—To my son Emile Piot I have executed deed and delivered same to P. J. Soucy, of East St. Louis, to be delivered to him upon my death, for the following described property, to-wit: Lot two hundred and ten (210) of the common fields of Cahokia, and other lands, description of which is contained in said above mentioned deed."

No other language is found in the will regarding any disposition of lands mentioned in the clauses above set out.

When the will and deeds had been executed by Mr. Piot he gave them to Mr. Soucy, who had prepared the instruments, and instructed him to destroy a will previously executed by him and two deeds which he had theretofore executed conveying the same lands to Baptiste and Emile Piot, all of which were then in Mr. Soucy's custody, and asked him to take charge of the instruments just executed and after his death to file the will for probate and deliver the deeds to his sons, Baptiste and Emile Piot. These instructions were all carried out by the notary, the will and

deeds last executed remaining in his office, without the grantees knowing of their execution, until a few days after Mr. Piot's death, when the grantees were notified to come and get them. Pursuant to that notification they called at the office and each received and accepted the deed in which he. was named as grantee. Later the will was admitted to probate and the deeds were filed for record. Up until the time of his death Mr. Piot retained possession and control of the lands.

The decree of the circuit court was rendered on the theory there was no sufficient delivery of the deeds by Mr. Piot and that he died intestate as to the lands described in them.

It is contended by plaintiffs in error that the delivery was sufficient and that the deeds convey the title.

H. E. SCHAUMLOEFFEL, and WISE, McNULTY & KEEFE, for plaintiffs in error:

Where a grantor signs a deed and places it in the hands of a third party, with directions to deliver such deed, at the death of the grantor, to the grantee in such deed, and such third party takes such deed and retains possession of it until the grantor's death and then delivers it to the grantee, who takes such deed and files it for record, the grantee acquires good title to the land by such deed. *Latimer* v. *Latimer,* 174 Ill. 418; *Baker* v. *Baker,* 159 id. 396; *Crabtree* v. *Crabtree,* 159 id. 348; *Shea* v. *Murphy,* 164 id. 614; *Miller* v. *Meers,* 155 id. 284; *Thompson* v. *Calhoun,* 216 id. 162.

While there must be a delivery of a deed by the grantor in his lifetime, it is not necessary that he should deliver it to the grantee. It is sufficient if he deliver it to a third person for the grantee, and such person can make a valid delivery of it to the grantee after grantor's death. *Stone* v. *Duvall,* 77 Ill. 475; 13 Cyc. 564; *Morrison* v. *Kelly;* 22 Ill. 610; *Crocker* v. *Lowenthal,* 83 id. 579; *Rodemeier* v. *Brown,* 169 id. 347.

The law makes stronger presumptions in favor of delivery of deeds in cases of voluntary settlements than in ordinary cases of bargain and sale. The presumption is in favor of the delivery, and the burden of proof to show there was no delivery rests upon the party attacking the conveyance. *Valter* v. *Blavka*, 195 Ill. 615; *Crabtree* v. *Crabtree*, 159 id. 348.

Anything which clearly manifests the intention of the grantor and the person to whom it is delivered, that the deed shall become operative and effectual and that the grantor loses all control over it and that by it the grantee is to become possessor of the estate, constitutes a sufficient delivery. The very essence of delivery is the intention of the party. *Crabtree* v. *Crabtree*, 159 Ill. 348; *Winterbottom* v. *Pattison*, 152 id. 334; *Gunnell* v. *Cockerill*, 84 id. 319; *Bovee* v. *Hinde*, 135 id. 157; *Kline* v. *Jones*, 111 id. 563; *Oliver* v. *Oliver*, 149 id. 542.

The complainants had the burden of proving that their ancestor died intestate as to the property described in the deeds, and had the burden of proving that there was no sufficient delivery of the deeds. 2 Ency. of Evidence, 777; *Scott* v. *Wood*, 81 Cal. 398; *Pease* v. *Cole*, 52 Conn. 53; *Funk* v. *Proctor*, 22 Ky. L. 1728.

In order for one to sustain his right to an action for partition he must show a clear title to the undivided interest or share of land sought to be partitioned. 9 Ency. of Evidence, 526; *Harmon* v. *Kelly*, 14 Ohio, 512; *Ross* v. *Cobb*, 48 Ill. 111.

J. M. FREELS, and R. H. FLANNIGAN, for defendants in error:

A recital in a will referring to certain property as having been theretofore deeded, the deed of which is invalid for want of delivery, cannot be given the effect of a devise. Nor does the recital aid in establishing that there was a valid delivery of the deed so as to make it operative.

Nor can a recital in the deed that the grantor had bequeathed the property by will make or aid a devise by will, when there is no such devise, or attempted devise or bequest, in such will. *Noble* v. *Tipton,* 219 Ill. 182; *Lange* v. *Cullinan,* 205 id. 365; *Hunt* v. *Evans,* 134 id. 496; *Lander* v. *Lander,* 217 id. 295; *Stodder* v. *Hoffman,* 158 id. 489; *Oswald* v. *Caldwell,* 225 id. 224; Underhill on Wills, sec. 475; Page on Wills, sec. 468.

A delivery is essential to the validity of a deed, and to constitute a delivery the grantor must part with all control over it and retain no right to reclaim or recall it. *Noble* v. *Tipton,* 219 Ill. 186.

The delivery is an essential part of the execution of the deed, and it will only become operative by and take effect from its delivery. Without delivery it is void. *Hawes* v. *Hawes,* 177 Ill. 413.

To constitute the delivery of a deed it must clearly appear that it was the intention of the grantor that the deed pass the title at the time and that he should lose all control over it. A deed for an interest in land must take effect upon its execution and delivery, or not at all. *Wilson* v. *Wilson,* 158 Ill. 574; *Elliott* v. *Murray,* 225 id. 112; *Benner* v. *Bailey,* 234 id. 81; *Russell* v. *Mitchell,* 223 id. 444.

An acceptance of the deed by the grantee is essential to the legal operation of the deed. Without such acceptance there is no delivery. *Gillen* v. *Gillen,* 238 Ill. 218; *Brown* v. *Brown,* 167 id. 636; *Abrams* v. *Beale,* 224 id. 499; *Dagley* v. *Black,* 197 id. 59; *Moore* v. *Flynn,* 135 id. 79; *Wilenou* v. *Handlon,* 207 id. 112; *Barrows* v. *Barrows,* 138 id. 654; *Lange* v. *Cullinan,* 205 id. 369; *Osborne* v. *Eslinger,* 155 Ind. 360.

The deeds in question were not intended to take effect in the lifetime of the grantor and are testamentary in character, and being in the form of plain warranty deeds they cannot be sustained as a testamentary disposition of property. *Noble* v. *Fickes,* 230 Ill. 601.

If the intended disposition of property is of a testamentary character and not to take effect in the testator's lifetime but is ambulatory until his death, such disposition is not operative unless it be declared in writing, in strict conformity with the statutory enactments regulating the making of wills. *Oswald* v. *Caldwell,* 225 Ill. 231; *Benner* v. *Bailey,* 234 id. 82; *Gump* v. *Gowans,* 226 id. 635.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The grantees were sons of the grantor. They accepted the deeds when they received manual possession of them after the father's death. He executed the deeds and his will at the same time. At that time he left the deeds and the will with Prosper J. Soucy, the notary public who had drawn them, and who testified: "When Mr. Piot delivered the will and the deeds to me he said he wanted me to keep them until his death and I should see that the will was spread of record and the deeds delivered to the boys; I was not to deliver the deeds until after his death; I kept them in my safe until after he died." This testimony, in so far as it shows Mr. Piot's purpose, finds strong corroboration in language of the will. The grantor never saw the deeds again and never thereafter attempted to exercise any control over them. Under these circumstances the deeds are effectual to convey title, (*Thompson* v. *Calhoun,* 216 Ill. 161, and cases there cited,) unless there is in the record proof which shows that the grantor, at the time he left the deeds with Mr. Soucy, had some intention other than that manifested by his acts and directions which have just been mentioned.

Defendants in error call attention to several matters in evidence which they regard as showing the grantor's intention to retain control and dominion over these deeds up until the time of his death. In considering these matters we pass over any question in regard to the competency of the proof, as no objection of that character has been urged

by plaintiffs in error. The record shows that the grantor several times, both before and after the execution of these deeds though not on the day on which they were executed, said to persons other than Mr. Soucy, "None of my folks shall have any of my property while I live; I am going to be boss." Such a statement is not inconsistent with the theory that the grantor reserved no control over the deeds after leaving them with the notary, for the reason that the sons could exercise no acts of ownership under the deeds until they received them, which was not to be until after the father's death. Prior to the time when he made this will and these deeds he had executed two wills, which had been drawn by Mr. Soucy. On the occasion of the execution of each of the earlier wills he also executed deeds to these two sons and at both of those times left the deeds and the will with Mr. Soucy. Afterwards he again took possession of the will and the deeds executed on each of the earlier occasions and destroyed them or had them destroyed, or otherwise made such disposition of them as that they no longer remained in the notary's possession. It is insisted that this is a circumstance which indicates that he reserved control over the deeds involved in this suit. The record does not disclose anything at all in regard to what was said by him to Mr. Soucy, or what arrangement was made between them on either occasion when earlier deeds were executed and left in the possession of the notary. The testimony as to the earlier transactions, therefore, is without significance in determining with what intention the last deeds were left with the notary.

Mr. Soucy testified in reference to the last two deeds: "If Piot had called for these deeds after he had delivered them to me and wanted them I certainly would have delivered them to him; I felt he had a right to control his property,"—and this is said to show that the grantor reserved control of the instruments. It shows rather the view of the witness in regard to the effect of the directions given him

by Mr. Piot. That testimony is not of assistance in determining the intention evidenced by the language used by the grantor. We think it clear that when the grantor delivered these deeds to the notary he parted with all control over them.

The decree of the circuit court will be reversed and the cause will be remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*