(No. 11939.—Decree affirmed.)
EARL A. MOSIER, Appellee, *vs.* JOHN OSBORN *et al.*
Appellants.

*Opinion filed June 20, 1918.*

1. DEEDS—*when vendor may rely upon representations of purchaser although no fiduciary relation exists.* Where a sale is made of property at a distance, so that the vendor has not the means of ascertaining the truthfulness of the representations made to him by the purchaser, he may rely upon the representations as being true and have redress if they are shown to be materially false, although no fiduciary relation exists between the vendor and purchaser.

2. SAME—*when proper foundation is laid for secondary evidence.* In a suit to set aside deeds executed by a deceased grantor, where the question is whether the deeds were delivered, and it is proved that the envelope in which the deeds were placed by the grantor had been left by the administrator, after the grantor's death, in the hands of attorneys whom the administrator had consulted previous to recording the deeds, and that the envelope was afterwards lost, the attorneys may testify to their recollection of the contents of instructions which the grantor had written on the back of the envelope in regard to delivery of the deeds.

3. SAME—*there is no delivery where grantor reserves control of deeds.* There is no delivery of deeds where the grantor does not surrender control of them nor place them in escrow unconditionally, to be delivered to the grantees upon his death, but reserves the right to recall them at any time.

4. ADMINISTRATION—*administration of an estate is a proceeding in rem.* The administration of an estate in the probate court is not an action between party and party but is in the nature of a proceeding *in rem* acting directly on the *res,* which is the estate of the deceased, and if the court has jurisdiction of the estate and the jurisdiction is properly invoked the decree of distribution is a judgment *in rem,* which conclusively determines the rights of all parties interested.

5. SAME—*party outside State is not bound by decree unless he has been served with process.* A decree rendered against a party who is beyond the limits of a State, upon constructive notice by publication under the statute, can only affect the property within the jurisdiction of the court, and the person cannot be bound unless the party has been served with the process of the court, but an order entered in the final settlement of an estate upon constructive notice will bind such party as to the personal property.

APPEAL from the Circuit Court of McDonough county; the Hon. HARRY M. WAGGONER, Judge, presiding.

SCOFIELD, HELFRICH & CALIFF, for appellants.

MILLER & WALKER, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Andrew Joseph Osborn was married at Chanute, Kansas, September 29, 1889. On that day he deserted his wife, left the State of Kansas, and until the time of his death, on January 18, 1912, resided in McDonough county, Illinois. After the marriage a son, Earl A. Osborn, was born. Mrs. Osborn secured a divorce and married a man by the name of Mosier, who legally adopted the boy, Earl. Andrew Joseph Osborn purchased a farm of eighty-four acres near Colchester, in McDonough county, Illinois, and resided on it at the time of his death. On June 12, 1911, he executed deeds which, had they been delivered, would have conveyed this land to his brothers, John and James Osborn, and his sisters, Mrs. Lock and Mrs. Crater. The grantees in these deeds are the appellants here. The deeds were handed to Isaac N. Boyd, a banker at Colchester, in a sealed envelope, upon which were written directions as to their delivery. After the death of Andrew Joseph Osborn these deeds, which had never left the custody and possession of Boyd, were delivered to the administrator of the estate, who, accompanied by John Osborn and another brother of the deceased, took the package to a firm of attorneys in the city of Macomb and were by those attorneys advised that by reason of the written instructions there had been no delivery of the deeds and they were therefore invalid. The administrator took the package back to Boyd, at Colchester, and delivered it to him. Later John Osborn represented to the administrator that the heirs of Andrew Joseph Osborn had agreed upon a division of the property and had also

agreed that these deeds should be recorded, and the administrator again secured the deeds from Boyd and placed them on record. Thereupon the remaining four brothers and sisters of Andrew Joseph Osborn brought suit against the appellants in the circuit court of McDonough county to set aside these deeds. Up until this time the affairs of the estate of Andrew Joseph Osborn were being settled upon the theory that his brothers and sisters were his heirs. During the progress of the suit to set aside the deeds, John Osborn, for a consideration of $500, secured a deed from Earl A. Mosier and his wife to the real estate in question. The complainants in the bill thereupon dismissed their suit, and Earl A. Mosier thereafter brought suit to set aside the deed executed by himself and wife to John Osborn, and also the deed executed by his father, Andrew Joseph Osborn, to the appellants. In his bill he alleged that John Osborn and his attorney had procured the deed from him by fraudulent misrepresentations as to the facts, among the misrepresentations alleged being one that John Osborn stated that the land was heavily mortgaged and of little value. The bill also sought to set aside the deeds executed by Andrew Joseph Osborn to appellants upon the ground that those deeds had never been delivered. The cause was heard by the chancellor, who found that the deed from appellee, Earl A. Mosier, to John Osborn had been procured by fraud and that there had been no delivery of the deeds executed by Andrew Joseph Osborn, in his lifetime, to appellants. These deeds were set aside and this appeal followed.

All the parties to this litigation lived in or near Chanute, Kansas. Appellee had resided in that vicinity all his lifetime. He knew that Andrew Joseph Osborn was his father but he never saw him. He also knew that John Osborn was his uncle and was slightly acquainted with him. The feeling between appellee and the Osborn family was not cordial, to say the least, and before the death of Andrew Joseph Osborn the relationship between appellee and his

father's relatives was not recognized by them. Prior to obtaining the deed from appellee John Osborn had been in McDonough county and was familiar with the land left by Andrew Joseph Osborn and with the condition of his estate. He had been fully advised that appellants had no interest in this property by virtue of the deeds of June 12, 1911, and he knew that if those deeds were invalid Earl A. Mosier, as the son and only heir of Andrew Joseph Osborn, had inherited this real estate. He called upon appellee at his home near Chanute and sought to purchase his interest in this land, which the uncontradicted proof shows was worth between $6000 and $7000, for a small fraction of its value. Appellee had never seen the land and knew nothing of its character or value nor of the condition of his father's estate. He asked John Osborn what his interest was and what the land was worth. Osborn informed him that his father had deeded the land to two of his brothers and two of his sisters and that they were engaged in litigation over the title; that the land did not amount to much and had a big mortgage against it. At the request of John Osborn appellee that afternoon went to the office of appellants' attorneys in Chanute, where he was informed by one of the attorneys that he did not know what interest, if any, appellee had in the land but that he thought appellants would pay him $500 for a deed. Appellee testified that relying upon the statements of John Osborn that the land did not amount to much and that there was a big mortgage against it he sold his interest that day to John Osborn and he and his wife executed the deed. Prior to bringing suit the appellee tendered $500 to John Osborn, and during the progress of the trial again offered to re-pay the money he received for making the conveyance. Osborn denied that he made the misrepresentations which appellee testified he made and which the chancellor found he made. The chancellor saw the witnesses and heard them testify and had a more favorable opportunity of determining the credibility

of the witnesses than we have. We perceive no reason for disturbing his findings of fact upon this question.

The conveyance having been procured from appellee for an inadequate consideration by the false representations of John Osborn as to the value of the land and that there was a mortgage against it, appellee is entitled to have the deed set aside notwithstanding the fact that there was no fiduciary relation between him and John Osborn, as he had the right to rely upon the statements made to him as being true. When a sale is made of property at a distance, so that the vendor has not the means at hand of ascertaining the truthfulness of the representations made to him by the purchaser, he may rely upon the representations as being true and have redress if they are shown to be materially false. (*Ladd* v. *Pigott,* 114 Ill. 647; *Borders* v. *Kattleman,* 142 id. 96; *Wenegar* v. *Bollenbach,* 180 id. 222; *Douglass* v. *Treat,* 246 id. 593.) No one would seriously contend that appellee would have sold his interest in this land for $500 had he known that it belonged to him as the sole heir of his father, that it was worth between $6000 and $7000 and was free from incumbrance. Moreover, as was the case in *Wenegar* v. *Bollenbach, supra,* appellee's title to this land was obtained from him at a figure that was so grossly inadequate as to amount to evidence of fraud. Here, as in that case, the inadequacy of price is accompanied by proof of other inequitable incidents which fully warrant granting the relief sought. The deed from appellee to John Osborn was properly set aside.

After the deeds of June 12, 1911, had been recorded the envelope in which they had been preserved was left with the attorneys who had previously been consulted in the matter. This envelope was afterwards lost. Each of these attorneys testified that he had seen this envelope and had read the notation upon it, and that the substance of the notation was that the deeds were to be delivered to the grantees at the death of Andrew Joseph Osborn if not called

for in his lifetime.   Appellants insist that this secondary
evidence was improperly admitted.   We are of the opinion
that a proper foundation was laid.   However, aside from
this proof there is sufficient evidence in the record to sus-
tain the decree.   The notation on the envelope was in the
handwriting of the justice of the peace who acted as scriv-
ener in drawing the deeds.   Conceding that Andrew Joseph
Osborn had never seen the notation on the envelope, that
it was not placed there at his direction and that he was
unaware of the fact that it had been made, Boyd testifies
that at the time the justice of the peace handed him the
envelope he stated to him, in the presence and hearing of
Andrew Joseph Osborn, "Here is some papers of Mr. Os-
born's; I want you to take them in the bank and take care
of them."   This direction was to the same effect as the
notation which it is testified was on the envelope.   Boyd
was simply requested to take the papers and hold them for
Andrew Joseph Osborn.   The grantor in the deeds did not
surrender control of them nor place them in escrow uncon-
ditionally, to be delivered to the grantees upon his death.
He reserved the right to recall them at any time.   This
clearly did not constitute a delivery, and the situation is not
changed in this respect by the fact that after the grantor's
death the deeds were placed on record by the administrator
of his estate.   They were not produced by the grantees but
were procured from the person with whom they had been
left by the grantor and in whose possession they had ever
remained.

Appellants contend further that appellee is now estopped
by an order of the county court of McDonough county to
assert that he is the heir of Andrew Joseph Osborn.   In
support of this contention they point to the fact that the
proof of heirship in the estate of Andrew Joseph Osborn
in the county court of McDonough county discloses that
his eight brothers and sisters were his only heirs-at-law.
When it came time for final settlement of the estate Earl

A. Mosier was notified in the manner provided by statute for service upon non-residents. In the order of final settlement it was found and decreed that appellee was not an heir of Andrew Joseph Osborn and the personal estate was distributed among the brothers and sisters of the deceased. Appellee did not appeal from that order, and it is contended that the same question which was there determined cannot be re-litigated in this suit, and that appellee cannot be heard to say that he is not bound by the former adjudication. The administration of an estate in the probate court is not an action between party and party but is in the nature of a proceeding *in rem* acting directly on the *res*, which is the estate of the deceased. If the court has jurisdiction of the estate and the jurisdiction is properly invoked the decree of distribution is a judgment *in rem*, which conclusively determines the rights of all parties interested just as fully as a decree in admiralty or any other court. (*Ladd* v. *Weiskopf*, 62 Minn. 29.) A decree rendered against a party who is beyond the limits of a State upon constructive notice by publication, under our statute can only affect the property within the jurisdiction of the court. The person can not be bound unless it has been reached by the process of the court. (*Harris* v. *Pullman*, 84 Ill. 20.) It is only in cases where jurisdiction of the person has been obtained by service of process or by the voluntary appearance of the party in the progress of the cause that the party is bound personally by the judgment rendered. The probate court of McDonough county obtained no jurisdiction over the person of appellee, and the order entered in final settlement of the estate of Andrew Joseph Osborn was therefore not binding upon appellee except only in so far as it affected the personal property of the estate. The appellee was not estopped to assert in the litigation concerning the title to the real estate in question that he was the sole and only heir of Andrew Joseph Osborn.

The decree of the circuit court is affirmed.

*Decree affirmed.*