(No. 14235.—Reversed and remanded.)

OSCAR F. JOHNSON *et al.* Appellees, *vs.* LILLIAN FLEMING,
Appellant.

*Opinion filed December 22, 1921—Rehearing denied Feb. 10, 1922.*

1. DEEDS—*rule as to delivery of deed in escrow.* In determining that a deed was delivered in escrow by a grantor prior to his death, it must clearly appear from what was said and done at the time of the transaction that the grantor's intention then was that it should presently become operative and to divest himself of all control over the deed, but if the grantor retains the right to recall the deed, even though he may not exercise that right before his death, the deed is inoperative to convey title for want of delivery.

2. SAME—*general rule as to presumption of delivery of deed.* A stronger presumption of the delivery of a deed obtains where the conveyance is a voluntary settlement than where it is a deed of bargain and sale, and the presumption is weaker where the grantee is an adult than where he is a minor, but the presumption of delivery arises out of the relationship of the parties.

3. SAME—*when deeds must be held to have been effectually delivered in escrow.* Deeds delivered to a third party with directions to deliver them "to the person who will call for them" after the grantor's death must be held to have been effectually delivered by the grantor, where the circumstances show an intention on her part at that time to relinquish all control over the deeds, and no act of the grantor after such delivery can have the effect of rendering the deeds inoperative.

APPEAL from the Circuit Court of DuPage county; the Hon. MAZZINI SLUSSER, Judge, presiding.

A. A. WORSLEY, for appellant.

CHARLES W. HADLEY, and S. L. RATHJE, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal is from a decree of the circuit court of DuPage county setting aside two deeds made by the grantor,—one to a daughter and the other to two daughters and a grand-daughter of the grantor. Emily R. Johnson was the grantor. She was a widow, residing on her property in

Glen Ellyn, DuPage county. She died at the age of 77 years, on October 27, 1915. She left surviving two sons, Oscar and Alvin E. Johnson; three daughters, Lillian Fleming, Viola Craw and Meta Bowker; and a grand-daughter, Ava Johnson Frazer. The deeds bear date September 5, 1915, but were executed September 6. The complainants in the amended bill to set the deeds aside are Oscar F. Johnson and Viola Craw and their respective spouses, and the bill alleges the grantor was ill from August, 1915, until her death and suffered great pain; that morphine, opiates and other drugs were given her, and that because of her age, illness and drugs given her, her mind became so impaired as to render her wholly incapable of transacting business from August until her death. The bill also charged Lillian Fleming with unduly influencing her mother to make the deeds, and further charges the deeds were never delivered during the lifetime of the grantor. After answers and replications were filed the cause was referred to the master in chancery to take and report the testimony and his conclusions. The master reported that the grantor at the time the deeds were made did not have sufficient mental capacity to make them, and that they were never delivered. No evidence appears to have been heard on the allegation of undue influence. The court sustained exceptions to the master's report that the grantor was of unsound mind but sustained the report and conclusion that the deeds were never delivered. The decree finds the grantor was of sound mind and sufficient mental capacity to make the deeds, but that the deeds were never delivered, never became operative, are void, and they are ordered canceled and set aside. Lillian Fleming has appealed.

The evidence upon which the question whether the deeds were delivered depends is the testimony of John LeMessurier, who prepared the deeds, took the acknowledgment to them and into whose custody they were delivered by the grantor, where they remained until after her death. The

witness had been engaged in the real estate business thirty-five years, lived in Glen Ellyn and was acquainted with Mrs. Johnson. He testified she came to his office in June or July, 1915, and brought him the title deeds to her property and requested him to prepare a deed conveying the property to the same persons named in the two deeds she later made. A week or ten days later witness met Mrs. Johnson on the street and told her the deed was ready. Later, about the month of August, Mrs. Johnson went to witness' office, read the deed over and said it was what she wanted; that she had done well by her boys and wanted the girls to have the rest of the property. She handed the deed, with her two old deeds, back to witness with instructions to keep them until she sent for them. She did not then sign the deed. September 5 Oscar Johnson called at witness' office and said his mother wanted the papers she had left with witness, and he delivered them to Oscar. The evening of the same day Oscar called at witness' house and said his mother was very ill and wanted witness to come to her house. He went there and saw Mrs. Johnson in her bed-room. She requested the other persons in the room to leave it and then told witness she wanted to make some changes in the deed witness had previously prepared; that she wanted the house she lived in to go to her daughter Lillian and the rest of the property to the other three women mentioned in the deed. Witness told her that would necessitate writing new deeds. The land Mrs. Johnson wished to dispose of by deed is an irregularly-shaped plot, described as lot 2 in block 10. Mrs. Johnson's residence was near the southwest corner of the plot, and there was a small, cheap house located near the north end of the plot but farther toward the east boundary than the residence. She said she was not certain whether fifty-five feet of the west part of the lot would be sufficient to cover the residence, and witness suggested she make it sixty feet, which she accepted and told witness to prepare two deeds,—one conveying to Mrs. Fleming the west sixty

feet of the lot and the other conveying the rest of it to the other three women. Witness testified Mrs. Johnson seemed weak and said she had been told she might not live through the night. She signed and witness acknowledged the deed he had previously prepared conveying all the property to the four grantees, and she requested the witness to prepare the two deeds and return to her home the next day, when she would execute them. The witness prepared the deeds and returned to Mrs. Johnson's house the next afternoon, bringing with him the two new deeds he had prepared and the deed Mrs. Johnson had executed the night before. Mrs. Johnson was in her room, fully dressed, sitting in a rocking chair. She requested all other occupants of the room to vacate it, one of whom was Mrs. Fleming. She then sat up to a table, put on her glasses and read the two deeds witness had prepared. She said that was what she wanted, and she signed and acknowledged the deeds before the witness as notary public. Witness then spoke to her about the deed she had signed and acknowledged the evening before and asked if he had not better destroy it. Mrs. Johnson told him to tear it up, and he tore it into scraps in her presence. She gave him the two deeds and told him, as he testified on direct examination, "to hold them until the person she would send for them after her death called," and as testified to on cross-examination, "she said you will give them to the person who will call for them after my death." Witness took the deeds and kept them in his possession until Mrs. Fleming called for them, about a week after her mother's death, and they were afterwards filed for record, as the master reports, "by some one or more of the grantees therein."

Appellees have not assigned cross-errors on that part of the decree finding the grantor was of sound mind when she made the deeds but have argued at length that branch of the case and insist that portion of the decree is erroneous and should be reversed. It is claimed the deeds should have

been set aside on that ground as well as on the ground they were never delivered.

It would serve no useful purpose to set out the evidence on the question of the sufficiency of the grantor's mental capacity to make the deeds. The evidence was conflicting, but it appears very clear to us that the weight of the proof did not sustain the allegation of the bill that Mrs. Johnson was of unsound mind when she executed the deeds.

As to whether the deeds were delivered, the testimony of LeMessurier, the notary who prepared the deeds and took the grantor's acknowledgments to them, is the only evidence in the record which throws any light on that question. Questions of a similar character have been frequently passed upon by this court, and it has always been held that the question of delivery depends on the grantor's intention in such cases as this, evidenced by what he said and did at the time. From these things it must clearly appear the grantor's intention was, when the deed was delivered to a third party, that it should presently become operative and that the grantor intended to divest himself of all control over the deed afterwards. (*Callerand* v. *Piot,* 241 Ill. 120; *Nofftz* v. *Nofftz,* 290 id. 36; *Vaughn* v. *Vaughn,* 272 id. 11; *Newman* v. *Workman,* 284 id. 77; *Hoyt* v. *Northup,* 256 id. 604.) But where the grantor retains the right to recall the deed, even though he may not exercise that right before his death, the fact that he retained the right would render the deed inoperative to convey title for want of delivery. (*Mosier* v. *Osborn,* 284 Ill. 141; *Stevens* v. *Stevens,* 256 id. 140; *Kunkle* v. *Johnson,* 268 id. 442; *Kavanaugh* v. *Kavanaugh,* 260 id. 179.) Whether a deed was delivered is a question of intention and must be determined from the words and acts of the parties in connection with the circumstances attending the transaction. (*Kavanaugh* v. *Kavanaugh, supra; Hoyt* v. *Northup, supra; Cline* v. *Jones,* 111 Ill. 563.) Stronger presumptions of delivery obtain in cases where the conveyance is a voluntary settlement

than in cases of deeds of bargain and sale. The presumption is weaker where the grantee is an adult than where he is a minor, but the presumption of delivery arises out of the relationship of the parties. *Henry* v. *Henry,* 215 Ill. 205; *Cline* v. *Jones, supra; Creighton* v. *Roe,* 218 Ill. 619; *Baker* v. *Hall,* 214 id. 364.

The testimony of LeMessurier as to the circumstances of making the deeds and what was said and done at the time is uncontradicted. If by what the grantor said and did at the time she executed the deeds and delivered them to the witness she intended them to become presently operative and put it out of her power to recall them during her lifetime it was a valid delivery. The uncontradicted testimony shows as early as June or July Mrs. Johnson intended to convey her property to all four of the women and requested LeMessurier to prepare a deed to effect that intention. A month or so later she called at his office, read the deed, expressed her satisfaction with it, but for some reason did not execute it but left it and her title deeds with him. Nothing more was said or done till September 5, when Oscar Johnson went to LeMessurier's office and said his mother wanted the papers she had left with him. About supper time the same evening Oscar went to LeMessurier's house and told him his mother was very ill and wanted him to come to her home. The medical testimony shows Mrs. Johnson was ill with Bright's disease in an advanced stage, and complications. She told LeMessurier at her house the evening of September 5 that she had been advised that she could not recover and might not survive the night; that she wanted to change the disposition of her property by dividing it among the four women, giving her daughter Mrs. Fleming the part on which the residence stood and the other part to the other three women. He told her that would require new deeds, and she instructed him to prepare them. At the same time she signed and acknowledged the deed previously prepared and delivered it to LeMessurier but re-

quested him to prepare two new deeds for her to execute. It is clear there was no delivery of the deed that night, for it was subject to recall and destruction if Mrs. Johnson lived to execute new deeds. (*Kunkle* v. *Johnson, supra.*) When the new deeds were executed the old deed was destroyed at her direction. The new deeds are dated September 5 but were in fact signed and acknowledged September 6. We have above set out the directions given LeMessurier by the grantor when she delivered the deeds to him. The circumstances under which the deeds were executed and delivered to LeMessurier were, that the grantor had been advised she could not recover and that her death might occur very soon. She died October 27. There is nothing in the directions she gave LeMessurier to indicate she retained the right to, or contemplated that she might, withdraw the deeds from his custody. To us it seems the plain meaning of the directions given the custodian of the deeds was, to hold them till her death and then deliver them to the person who called for them. He was asked, on cross-examination, if he understood he was holding the deeds as agent of Mrs. Johnson, and answered he had no understanding about it except that he was to carry out the instructions Mrs. Johnson gave him; that she believed she had but a short time to live and he was to keep them till her death and then deliver them to the person who called for them. It was, of course, not the province of the witness to determine the legal effect of the directions given him by Mrs. Johnson, but we are of opinion the instructions warrant the conclusion that she intended by what she did to relinquish all control over the deeds. If she did, the custodian held the deeds for the grantees, and no act of the grantor afterwards could be effective to revoke them. *Bogan* v. *Swearingen,* 199 Ill. 454; *Moore* v. *Downing,* 289 id. 612; *Waters* v. *Lawler,* 297 id. 63.

We see no substantial difference in the directions given by the grantor to the custodian in *Thompson* v. *Calhoun,*

216 Ill. 161, and the directions given in this case. In that case the directions were, "Keep this deed in your possession in a safe place and as soon as you can after my death place it on record," and that was held to evidence the intention of the grantor to irrevocably divest himself of all dominion or control over the deed. The only difference is, that in the *Thompson case* the custodian was instructed to place the deed on record after the grantor's death, and in the instant case he was to deliver the deeds to the person who would call for them after the grantor's death. Another nearly parallel case is *Callerand* v. *Piot, supra.*

The grantee in one of the deeds called for them after Mrs. Johnson's death and they were placed on record. As we have seen, under the authorities, if the deeds were irrevocably delivered to LeMessurier for the purpose of passing title to the grantees,—and we hold they were,—no action could afterwards render them inoperative. We are unable to see anything in the directions given the custodian when the deeds were delivered to him to warrant any inference that the grantor intended to retain or supposed she had retained the right to recall them. She realized she was going to live but a short time, and nothing was said by her when the deeds were made which indicates she had any thought she might change her mind or that she had any desire to retain the right to recall them.

We are of opinion the circuit court erred in entering a decree setting the deeds aside.

The decree is reversed and the cause remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded, with directions.*