(No. 31273.—)
BESSIE MASON ALEXANDER, Appellant, *vs.* AMERICAN
BIBLE SOCIETY *et al.*, Appellees.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

Francis W. Purvis, and Rodney A. Scott, both of Sullivan, and Monroe, Allen & McGaughey, of Decatur, for appellant.

A. L. Yantis, of Shelbyville, and Hemphill & Kelsey, of Carlinville, for appellees.

Mr. Justice Fulton delivered the opinion of the court:

This is an appeal by the plaintiff, Bessie Mason Alexander, from a decree of the circuit court of Moultrie County dismissing her complaint by which she sought to quiet and confirm in her the title to certain real estate in Moultrie County and to have certain deeds of conveyance to the property set aside and declared null and void. A freehold being involved, the appeal has been perfected to this court.

The complaint alleged that the plaintiff was the daughter and sole and only heir-at-law of William H. Mason and Annie M. Mason, his wife, and that William H. Mason in the year 1901 acquired the title to the north half of section 29, township 14 north, range 4, east of the third principal meridian in said county, and that subsequently by deeds of conveyance duly recorded he conveyed the west half of the northwest quarter and the north half of the northeast quarter of the northwest quarter of said section 29 unto his wife, Annie M. Mason, and that from the date her father acquired the ownership of said property in 1901

until their respective deaths William H. Mason and Annie M. Mason exercised sole, complete and exclusive ownership of said real estate. She likewise alleged that in the year 1905 William H. Mason acquired the fee-simple title to a tract of land situated in the northeast quarter of section 22, township 14 north, range 4, east of the third principal meridian, of about six acres, and that from the date he acquired the same until his death on April 30, 1946, he was the sole and exclusive owner thereof, and that thereafter until her death on October 21, 1947, Annie M. Mason had the possession of said property, and that since the death of her mother the plaintiff has had the possession of the property.

She likewise alleged that her father and mother left a joint will which was duly admitted to probate as the last will of William H. Mason on June 5, 1946, and as the last will of her mother, Annie M. Mason, on November 20, 1947, said will being as follows:

"Page 1 of
OUR JOINT AND LAST WILL

KNOW ALL MEN BY THESE PRESENTS, namely:—In devout and humble recognition of Almight God as the Giver of all that has been entrusted to our Stewardship, We, William H. Mason and Annie M. Mason, husband and wife, aged 88 and 92 years respectively, of the town of Bethany, Illinois, realizing that in the course of nature our tenure of earthly life is limited, deem it wise while still alert and competent without any outside help to put in our own handwriting our wishes concerning the final disposition of our property. This we do as mutually agreed in the following form which we declare to be our Last Will and Testament to-wit:

1. That Charles T. Calvert act as the Executor of our estate with full power of attorney in all matters thereto; provided however that, should he become incapacitated for this service, then Russell Younger is appointed to serve in his stead or in cooperation with Mr. Calvert.

2. In the event of the decease of either or both of us all our funeral expenses are to be paid out of available funds as provided.

3. Having decided to convey all our real estate by Warranty deeds and the said deeds properly safeguarded and placed in the care of The Shelby Loan and Trust Co. with instructions.

4. We further desire that all our personal property be liquidated in due time and the proceeds to be constituted a fund to be employed as designated on page 2 of this our last Will.

"Page 2 of

OUR JOINT AND LAST WILL

From the fund set forth on page 1 (one) of this Joint Will we desire the following payments made.

1. All contingent expenses.

2. Any Inheritance tax assessed against the legacy deeded to our daughter, Mrs. Bessie Mason Alexander.

3. Of the balance remaining
   (a) 50 per cent to the Board of Foreign Missions of the Presbyterian Church, 156 Fifth Avenue, New York, N. Y.
   (b) 25 per cent to the Board of Pensions of the Presbyterian Church, Witherspoon Bldg., Philadelphia, Pennsylvania.
   (c) 25 per cent to The American Red Cross.

4. From the contents and furnishings of the Home in Bethany our daughter is privileged to select any articles she desires.

5. Of the collection of hand paintings in the Home we wish them to become the property of Blackburn University at Carlinville, Illinois and the entire collection be kept together as a memorial to Mrs. Annie Mason of Bethany, Illinois whose skill and perservance they were produced.

SIGNED    WILLIAM H. MASON  (SEAL)
ANNIE M. MASON  (SEAL)"

She alleged upon information and belief that paragraph 3 of the will referred to three instruments executed by her parents, one instrument running to the plaintiff, as grantee, conveying the east half of the north half of section 29, another instrument running to the American Bible Society, as grantee, conveying the northwest quarter of section 29 and the third instrument running to Blackburn University, as grantee, conveying the property in section 29 consisting of about six acres. She alleged that said three instruments were left with Russell Younger, the vice-president of a bank at Shelbyville, Illinois, with no instructions excepting a notation on the envelope reading, "To be filed in the Recorder's Office at Sullivan, Illinois, immediately

upon the decease of both Wm. H. Mason and wife." Likewise it was alleged that there was no consideration for said instruments; the grantees were not informed of their execution and the instruments were never beyond the control and the dominion of the makers during their lifetime, and that they had been filed in the recorder's office but had never been recorded, and that said instruments were entirely void. The American Bible Society, Blackburn University and the tenants in possession of the real estate were made parties defendant. The American Bible Society and the Blackburn University answered denying that William H. Mason and Annie M. Mason were seized of the real estate at the time of their deaths; denying that the instruments referred to in the complaint were never beyond the control and the dominion of the makers and that they were never delivered, and they attached to their answers, as exhabits, warranty deeds dated February 5, 1945, conveying the property to them, said deeds being duly acknowledged before a notary public in Illinois and having been recorded in the recorder's office of Moultrie County on July 21, 1948.

By their answers they alleged that the deeds had been duly delivered unto Russell Younger, vice-president of the Shelby Loan & Trust Co. of Shelbyville, Illinois, with instructions to file the same in the recorder's office of Moultrie County immediately upon the decease of both William H. Mason and Annie M. Mason; that said deeds remained in the possession of Russell Younger continuously from the date of their receipt by him until the death of both of the grantors, and that he did on November 12, 1947, file the deeds in the recorder's office of Moultrie County, and that since the filing of the same the deeds have been recorded.

The matter was referred to a special master in chancery who took the testimony and reported to the chancellor recommending that the complaint be dismissed and that a decree be entered holding that the delivery of the deeds

by William H. Mason in the sealed envelope to Russell Younger with instructions written thereon, as recited above, was a legal and valid delivery of said deeds.

Objections were filed to the report of the master and subsequently overruled. Whereupon the chancellor entered the decree in favor of the defendants, holding that the deeds had been properly delivered and dismissing the complaint for want of equity.

The appellant contends that the evidence conclusively establishes:

1. That the deeds were testamentary in character and therefore void.

2. That the grantors did not intend immediate conveyance of a future estate to the grantees in the deeds, but intended to retain control and therefore there was no delivery.

3. That the grantees have failed to show clear instructions amounting to delivery beyond the recall of grantors.

4. That the weight of the evidence is against the decree.

A review of the record indicates that William H. Mason was a retired minister and that he and his wife were, on and prior to September 23, 1941, the owners of the real estate mentioned above, each severally owning a portion thereof in fee simple. On September 23, 1941, they signed, and two days later acknowledged before a notary public, a deed of conveyance of the east half of the land owned by them in section 29 to their daughter, Bessie Mason Alexander. Subsequently on February 5, 1945, they signed and acknowledged two other warranty deeds, one conveying to the American Bible Society the west half of the land in section 29 and the other conveying to Blackburn University the six-acre tract in section 22. On February 7, 1945, they executed the joint will shown above.

The only witness in the case was Russell Younger, who testified that in the month of February, 1945, he called at the Mason home at the request of Mr. Mason, who in

the presence of Mrs. Mason, handed him two envelopes and that at that time Mr. Mason stated in substance, "Here is two envelopes. The instructions are written on the outside and when we die, you follow the instructions on the envelope." He further testified that except for the instructions on the back of the envelope containing the deeds he never at any time received any other directions or instructions from either Mr. or Mrs. Mason concerning the deeds and that after delivery to him of the envelopes neither Mason nor his wife ever mentioned the matter to him. Younger testified that he placed the envelope containing the deeds in one of the drawers in the vault of the Shelby Loan & Trust Company, where the same remained until after the death of both Mr. and Mrs. Mason, and that this drawer where the deeds were kept was not accessible to anyone other than the officers and employees of the bank.

The principal question to be determined in this case is whether or not Mr. and Mrs. Mason in depositing the envelope containing the deeds with Younger established an intent to place the deeds beyond recall or control and with a present intent to immediately convey a future interest in the lands. The witness, Younger, was examined in detail at the trial and we have carefully reviewed his testimony, and it appears without question that at the time the envelope containing the deeds was delivered to him he did not know that it contained deeds of conveyance and there was nothing thereon to so indicate. He likewise was not informed by the grantors of the names of the grantees in the deeds. It also clearly appears that there was no understanding or agreement between the grantors and Younger regarding the return to the grantors of the envelope in the event they desired to change their mind. It likewise appears that after Younger received the envelope containing the deeds it was never in the possession of the grantors and that they never could have obtained possession thereof without obtaining at least the permission of Younger or some other

officer or employee of the bank, since the grantors did not have access to the vault in which the deeds were held. It also clearly appears that neither of the grantors ever requested the return to them of the deeds nor did they subsequently discuss the contents of the envelope with its possessor, Younger.

Delivery of a deed is determined by the intention the grantor has manifested by words and acts or the circumstances surrounding the transaction, and unless the grantor intended to pass title no delivery occurs even though there has been a manual transfer of the deed. (*Rothenberg* v. *Rothenberg,* 378 Ill. 242.) This court has likewise held that delivery of a deed is essential to the operation and validity of the conveyance. (*Smith* v. *Pelz,* 384 Ill. 446; *Deitz* v. *Deitz,* 295 Ill. 552.) In order for a deed to become operative it is necessary that the intention of the grantor is manifest and that he surrender all control and dominion over the deed. *German-American Nat. Bank* v. *Martin,* 277 Ill. 629.

The cases where a grantor delivers a deed of conveyance to a third person and the deed is delivered to the grantee or recorded after the death of the grantor present questions of law and fact which are the subject matter of considerable litigation in this State. We have held that where a deed is delivered to a depositary to be kept until the grantor's death, the effect of its delivery depends upon the intention of the grantor when the deed was delivered to the custodian. (*Deitz* v. *Deitz,* 295 Ill. 552.) The rule has been established that where a deed is delivered to a third party to be kept until the grantor's death with the intention of the grantor to part with all control over it whatsoever, a subsequent change of the grantor's intention cannot affect the delivery. (*Hudson* v. *Hudson,* 287 Ill. 286.) Where a deed is merely left with a third person for safekeeping, to be taken care of, and the grantor has the power of recall, the deed has not been legally delivered

even though the deed remains with the third person until after the grantor's death and is then recorded. (*Mosier* v. *Osborne,* 284 Ill. 141.) Likewise if the grantor delivers the deed to a third person without any direction as to delivery to the grantee the deed is invalid. (*Selby* v. *Smith,* 301 Ill. 554.) If the grantor merely places the deed in the hands of a third person for safekeeping or as a convenient place for deposit, the deed is not validly delivered and conveys no title. *Deitz* v. *Deitz,* 295 Ill. 552.

Cases requiring a determination as to the validity of the delivery of deeds delivered to third persons, but not recorded or in possession of the grantee until after the grantor's death, have fallen into two categories, namely, deeds to members of the family, for whom the grantor may be presumed to desire to provide because of natural affection, which are called "voluntary settlement cases," and the other category where deeds are made to strangers or persons not related, which are termed "involuntary settlement cases." In the case where the grantee in the deed is a member of the family or near relative and the deed is not in the possession of the grantee at the time of the grantor's death, there is a presumption of law that the delivery of the deed was valid, and when brought in question the burden is upon the grantor or those claiming adversely to the grantee in the deed to show clearly that there was no delivery of the deed during the lifetime of the grantor. In the nonvoluntary settlement cases, where the grantee is not related to, or a member of the family of, the grantor and the deed is not in the possession of grantee at the time of the grantor's death, the law presumes that the delivery is invalid and the burden is upon the grantee to prove that the delivery was legally complete prior to the grantor's death.

The case at bar presents a situation wherein the deeds in question to American Bible Society and Blackburn University fall in the category of involuntary settlements.

Inasmuch as the deeds were not in the possession of the grantees at the time of grantor's death, the burden then fell upon the grantees to prove that the grantors had made an effectual legal delivery of the deeds beyond their possession, control and dominion and without the right to recall the same or change the disposition thereof. As we have stated above, at the time the envelope was delivered to Younger he was not informed that the envelope contained deeds of conveyance nor was he informed of the names of the grantees. He was likewise not informed that the grantors intended to dispose of their property to the grantees. A careful review of Younger's testimony indicates that there were no instructions given him regarding the disposition of the envelope other than "when we die you follow the instructions on the envelope." The instructions on the envelope were, "To be filed in the Recorder's Office at Sullivan, Ill. immediately upon the decease of both Wm. H. Mason and wife." The evidence also indicated that Younger had acted in behalf of the grantors as their agent and transacted certain items of business for them from time to time prior to the time Mr. Mason gave these deeds to Younger. It also appears that at the same time the envelope containing the joint will of Mr. and Mrs. Mason was also handed to him and that the statement made by Mr. Mason to Younger applied equally to the envelope containing the will as it did the envelope containing the deeds. A will being ambulatory in nature, it is presumed that the grantors would have been entitled to its return at any time after its delivery.

Numerous cases have been cited by the parties, many of which have similar facts regarding the statements made by the grantor at the time the deeds were given to the third party. However, in each of those cases it appears that the grantees were related to the grantors or members of their family and in those cases the presumption of a valid delivery applied. In the case at bar nothing was

said indicating that Younger was to take the deeds as the trustee or agent for the grantees and nothing was said whereby the intention of the grantors to deliver the complete dominion and control over the deeds beyond their right to recall the same was manifested. This case is similar to the case of *Lange* v. *Cullinan*, 205 Ill. 365, in which the grantor placed deeds in the hands of his sister without any directions as to their delivery, and in that case this court held that the deeds were not legally delivered, and we stated, at page 369, "Nothing was said indicating that she was to take the Deed as the Trustee or agent for the Grantee, but, on the other hand, inasmuch as his sister was attending to a part of his business because of his illness and inability to attend to it himself, it is not unreasonable to infer that she was in this, as in other things, acting for him. If he had regained his health there can be no doubt that the custodian would have been bound to return the Deed to the Grantor upon his demand, had she received no instructions other than those detailed by her in her testimony." We likewise regard the case at bar as falling in the same category as the case of *Herrin* v. *McCarthy*, 339 Ill. 530, in which case a deed of conveyance to the grantee, who was the housekeeper for the grantor, was placed by the grantor in a safety-deposit box at a bank into which the grantor was the only person who could gain admission. Subsequently, the grantor delivered the keys to the box to the grantee. In that case we stated, "The present case is not one of voluntary settlement. This case is a mere gift to a stranger. The voluntary settlements in which the more liberal presumption in regard to the delivery of deeds prevails are such conveyances as are made for the benefit of husbands and wives or their children or of other near relatives, for whom the donor may be presumed to wish to provide because of natural affection." In that case there was evidence indicating that the grantor had intended to deed this property, which was

the house in which he lived, to the housekeeper, and there was evidence that the grantor felt that she had taken better care of him than he had ever had in his life and that he desired to befriend her, yet in that case, in spite of the intention of the grantor, we held that the conveyance had not been delivered, and further stated, "All the cases in which the presumptions in regard to the delivery of deeds arising in cases of voluntary settlements have been recognized are cases of near relationship between the grantor and grantees."

While the intention of the grantors in the case at bar is meritorious and one could expect that because of their previous experiences in life they would desire that organizations such as the American Bible Society and Blackburn University would benefit from their worldly possessions, the law has prescribed certain plain rules to be observed in the execution of documents by which the title to real property is transferred, and while in this case the intention of the parties may fail, the court cannot overrule long-established rules of law governing the transfer of real property in this State, which have been established for the benefit of the public at large and the violation of which would tend to render titles to real estate unstable and uncertain.

We hold that there was no proof that these deeds were validly delivered during the lifetime of the grantors and that the decree of the circuit court of Moultrie County is erroneous. The decree is reversed and the cause is remanded, with directions to that court to enter a decree in favor of the plaintiff, removing the deeds as clouds upon her title and confirming the title to said premises in her.

*Reversed and remanded, with directions.*

Mr. JUSTICE THOMPSON, dissenting:

I cannot accept the views as expressed in the majority opinion without respectfully dissenting, especially in view

of the emphasis placed in the opinion and its reliance on so-called voluntary and nonvoluntary settlement cases. The majority opinion proceeds upon the theory that this being a nonvoluntary settlement case, there is an existing presumption the delivery is invalid.

This is not in harmony with the rule where we have held that stronger presumptions of delivery obtain in cases where the conveyance is a voluntary settlement than in cases of deeds of bargain and sale. The presumption is weaker where the grantee is an adult than where he is a minor, but the presumption of delivery arises out of the relationship of the parties. *Johnson* v. *Fleming,* 301 Ill. 139; *Baker* v. *Hall,* 214 Ill. 364; *Cline* v. *Jones,* 111 Ill. 563.

The law does not presume, as held in the majority opinion, that the delivery is invalid, but the presumption in favor of delivery of deeds is stronger in voluntary settlement cases than in ordinary cases of bargain and sale. In voluntary settlement cases there is a more liberal presumption in regard to the delivery of deeds and the same formality and strict compliance with the rule as to delivery is not required. The presumption in nonvoluntary settlement cases is such that arises in any case between the parties and, of course, the relationship of the parties must be considered and the presumption of delivery arises out of such relationships. The closer the relationship between the parties, even if the deed be considered a bargain and sale, the greater is the presumption of delivery. To follow the opinion's line of reasoning, as applied to the facts in this case will, instead of elucidation, further complicate the already existing conflict in the many cases pertaining to the rules applicable to the delivery of deeds.

The primary question to be determined in each and every case, whether it be a voluntary settlement or bargain and sale, is whether the deeds executed have been delivered. Proof must be made of such delivery, and while presump-

tions frequently aid in meeting such burden, they are unimportant in cases where the intention of the grantor is shown by the evidence. The delivery of a deed is an essential part of its execution and in determining whether there has been a delivery, the intention of the grantor is the controlling factor. A delivery may be made by acts without words, by words without acts, or by both words and acts, and anything which clearly manifests the grantor's intention that the deed becomes operative and effectual. We must not lose sight of the intention, as disclosed by the evidence, and inject questions pertaining to presumptions. This has not pointed the way to clarification of the law as to the delivery of deeds and has left more or less conflict in the decisions on this question. The question of intention, if carefully pursued and kept in the foreground, will point the way to a correct determination of the issues in such cases.

We find here, from an examination of the record, that William H. Mason was a retired Presbyterian minister and, with his wife, was the owner of the real estate in question. On September 23, 1941, they signed and, two days later, acknowledged before a notary public, a warranty deed, conveying the east one-half of the land owned by them in section 29 to their daughter, Bessie Mason Alexander. Subsequently, on February 25, 1945, they signed and acknowledged two other warranty deeds, one purporting to convey to the American Bible Society the west half of the land in section 29, and the other purporting to convey to Blackburn University, the six-acre tract in section 22. On February 7, 1945, they executed a joint will. Thereafter, at some time in the month of February, in the same year, the will in a sealed envelope, with an endorsement thereon indicating it contained their will, and the three deeds in another sealed envelope endorsed in the writing of Mason "To be filed in the Recorder's office at Sullivan, Illinois, immediately upon the decease of both

William H. Mason and Wife," were delivered by Mason, in the presence of his wife, to Russell Younger, who was vice-president of the Shelby Loan and Trust Company.

Russell Younger testified that about the month of February, 1945, he called at Mason's home at his request, and while there Mason, in the presence of his wife, handed witness the two envelopes, stating to him, in substance, "Here are two envelopes. The instructions are written on the outside and when we die, follow the instructions on the envelopes." How could the written language more clearly disclose the intention of the parties, aside from the fact they had gone before a notary public and by a warranty deed had conveyed this property to the grantees. The instructions were "when we die, follow the instructions on the envelopes." How could there be any intention on the part of the grantors to retain any control over the documents when the instructions were clear and explicit, "when we die, follow the instructions on the envelopes." No restrictions or restraint surrounded the instructions. No attempt was ever made by either of the parties to, in any way, interfere with the specific instructions they had given.

Applying the rule that we must consider anything that clearly manifests the grantor's intention, the deeds became operative and effective. Surely such instructions point the way to a complete delivery. Further, when the deeds were given to him with the instructions, Younger placed the envelopes containing the deeds in one of the drawers of the vault of the Shelby Loan and Trust Company, where the same remained under his supervision until after the death of both Mason and wife. The drawer in the vault where the deeds were kept was not accessible to anyone, other than the officers of the bank, and neither Mason nor his wife had access thereto.

The majority opinion relies upon the case of *Lange* v. *Cullinan*, 205 Ill. 365, where it was held the deeds were not delivered. A careful reading of this opinion will imme-

diately disclose the situation and facts are not comparable. There, the grantor, when asked as to whether the deed should be delivered to grantee, made the emphatic reply, "No." This, of course, did not show that he had relinquished all control over the instrument, that being the question, and further, there was no direction as to delivery. In the instant case, specific directions were given as to the delivery of the deeds. The case of *Herrin* v. *McCarthy,* 339 Ill. 530, relied on by the majority opinion, is so dissimilar in facts that it affords no probative value. The facts there disclosed that the deed was placed by the grantor in his own safety-deposit box, and while later the grantee was given a key, the possession of the key by the grantee did not give her access to the box and did not deprive the grantor of the right of access and the power of control and right to reclaim the deed.

Another thing pertinent to the delivery of these deeds was the fact that the grantors, immediately after they executed the three deeds before a notary public, made a joint will in which this statement was made, in clause 3: "Having decided to convey all our real estate by Warranty deeds and the said deeds properly safeguarded and placed in the care of The Shelby Loan and Trust Co. with instructions."

In *Callerand* v. *Piot,* 241 Ill. 120, it was held that deeds executed by a testator contemporaneously with a will, which referred to the deeds as having been executed and delivered to a third person, for delivery to the respective grantees upon the testator's death, were well delivered and passed title. It was also held there, that while the notary to whom the deeds were delivered by the grantor, to be delivered to the grantees at the grantor's death, testified that he would have given the deeds back to the grantor if he had wanted them, as he felt the grantor had a right to control his property, this was merely the view of the witness and would not tend to show the grantor did not intend

to part with all control over the deeds. It was further said in this case that the deeds there were well delivered, for the reason there was nothing to show the grantor intended to retain any control over the deeds after delivering them to the notary, though he kept possession of the lands until death.

While this case might fall within the category of a voluntary settlement case, nothing is said in the opinion that the determination was made, other than a finding as to the intention of the grantor, without any recourse to presumptions.

It might be added that in the instant case the three deeds, one of which went to the grantor's daughter, and the other two to The American Bible Society and Blackburn University, were all delivered at the same time. How the severance of the intention of the grantor could be determined by a presumption as to one and not the other, when all of the deeds were delivered at the same time in the same sealed envelope, held by the same party for delivery, presents, it seems to me, a question which affords some difficulty of solution, concerning which we have had no light.

No evidence can be found in this record indicating any intent to reserve, in any way, control over the instruments. The reservation of control is entirely inconsistent with the instructions of the grantors and their acts attending the delivery. There was positive evidence of intent to deliver, they were delivered, were held and disposed of in accordance with specific directions. The intention of the grantor is clear and, as it is the controlling element on the question of delivery, the decree of the circuit court of Moultrie County, confirming the master's findings, should be affirmed.