(No. 32104.—

EDNA PEARL WOLBER FONDA, Appellee, *vs.* RUTH WOLBER MILLER, Appellant.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

HARMAN, SLOAN & McKENZIE, of Victoria, B. C., Canada, and J. L. BREARTON, of Savanna, for appellant.

FRANKLIN J. STRANSKY, of Chicago, for appellee.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

On June 30, 1949, appellee, Edna Pearl Wolber Fonda, filed her complaint in equity in the circuit court of Carroll County, praying that a certain deed made and executed by William Wolber as grantor to plaintiff under the name of Edna Pearl Wolber and defendant, Ruth Miller, as grantees, as joint tenants and not as tenants in common, subject to an incumbrance, be set aside, vacated and held for naught, and that said real estate so conveyed be decreed to pass under the last will and testament of William Wolber to the plaintiff, as sole legatee and devisee. An answer was filed to said complaint denying that the plaintiff was entitled to any of the relief prayed therein. The cause was referred to a master to take the proof and report without findings. The circuit court examined the master's report and decreed that the deed be set aside as prayed in the complaint. Defendant appeals directly to this court, as a freehold is involved.

The facts, briefly stated, are that William Wolber was the father of the plaintiff and the defendant and that on July 22, 1936, he purchased a 226-acre farm for $67.50 per acre, made and executed a warranty deed which purported to convey to Edna Pearl Wolber and Ruth Miller, as joint tenants, said real estate, reserving to himself the use of said real estate during his natural life and subject to certain mortgages and trust deeds existing at said time. He purchased the farm from the receiver of the Shumway State Bank. Paul Knox was the real-estate broker acting in the case. Wolber, before the transaction was completed, told Knox that he was going to deed the farm to his two daughters. Knox testified that he told him it was all right to give the land to the two daughters, provided he kept a life use of it, or words to that effect. He further testified that he probably told Wolber it was not advisable to part with everything he had and suggested that he reserve unto himself a life estate in the farm.

Charles E. Stuart was Wolber's attorney in this transaction. He was one of the principal witnesses at the hearing of this cause. He testified that he had prevailed upon Wolber not to deed the land to the girls without reserving unto himself a life estate. Mr. and Mrs. Charles Schell were people with whom Wolber lived at the time of the purchase of the farm. They were both witnesses at the hearing of this matter. He told them of the fact that he was contemplating the purchase of the farm in question and that he was going to deed the land to his two daughters. Then after he had made the purchase of the farm he came home and told Mr. and Mrs. Schell of the fact that he had deeded the farm to his two daughters but that he had reserved a life estate to himself, and seemed very happy about the whole matter.

The proof further showed that after the deed was recorded it was retained in the possession of Wolber and he collected all the rents from said land during his lifetime

and made certain valuable improvements and discharged the indebtedness, so that at the time of his death, the land was free and clear of incumbrances. About a year after executing the deed he entered into a contract with a neighbor, Virgil Bushman, to exchange 20 acres of the farm he had conveyed to his daughters for 20 acres of land belonging to Bushman, believing that this would make a more desirable farm. In attempting to carry out this contract a deed was signed by himself and by Mrs. Fonda and her husband and forwarded to Ruth Miller at her home in Moosejaw, Canada, but she returned the deed unsigned. Mr. Wolber then had his attorney, Stuart, negotiate with Mrs. Miller, and considerable correspondence took place between the attorney and Mrs. Miller and between the attorney and Wolber. In one of his letters to his attorney in March, 1939, Wolber said, "I need my daughter's, Mrs. D. J. Miller's, signature in order to legally close the trade with Mr. Bushman," and, also, "So I have reached a decision. I have made up my mind to set aside the deed I have had made out equally in both girls favor and rule out Mrs. Miller entirely." Wolber finally directed his attorney to bring a lawsuit against Mrs. Miller to set aside the deed, but this was never done, and, in fact, the attorney advised Wolber that he did not know of any fact or law which would warrant such a proceeding and that, in his opinion, the suit to set aside the deed would be unavailing. In 1948, Wolber made a will and devised to Mrs. Fonda "all of the property of every kind, real and personal, * * * which I own or may be entitled to possess at my decease." His will also contained the following provision: "I specifically declare herein that it was not my intention, when the above described real property was deeded to my said daughters, Edna Pearl Wolber, now Edna Pearl Wolber Fonda, and Ruth Wolber Miller, by me, on the 22nd day of July, 1936, subject to a life estate in myself, and subject to mortgage and trust liens of record, to give my said

daughters any right, title or interest in or to any sum or sums of money that I might pay upon said mortgage indebtedness." The correspondence between Mrs. Miller and her father and her father's attorney indicated that there was some trouble between her and her sister, Mrs. Fonda, and, while Mrs. Miller refused to sign the deed when it was presented, she said in her correspondence that she might sign it later. After the land was acquired, a public road was constructed across it, and Mrs. Fonda and Mrs. Miller were both made parties to an eminent domain proceeding, and Mrs. Miller signed the dedication of right of way across the land.

Upon these facts, the court made a finding that the deed of Wolber executed on July 22, 1936, was intended to operate as a testamentary disposition of said real estate, and that said deed was never delivered to the grantees named therein, or either of them, and that the provisions of said deed were never accepted by either of the grantees, and thereupon ordered that the deed of conveyance be set aside and declared null and void and removed as a cloud upon the title of the plaintiff, who was the devisee of all the property owned by the said William Wolber. In other words, while the will did not describe any property, it willed to Mrs. Fonda all the property of which Wolber died seized, and the effect of the decree of the court in setting aside the deed was to give all of the estate to the plaintiff. There is very little dispute in the factual background of this controversy. The issues arise on the applicability of certain legal principles. There are three inquiries, first, was the deed of July 22 testamentary in character, second, was the deed delivered by the grantor so as to make it effective, and, third, was the conveyance accepted by the grantees?

In considering these questions, it first appears that this conveyance was in the nature of a family settlement, as defined in *Alexander* v. *American Bible Society*, 407 Ill. 49.

The grantees were the children and only heirs-at-law of the grantor. The deed was made under the advice and assistance of an able attorney. The evidence shows that his original intention was to deed the property to his children without any reservation, but upon the advice of his attorney he reserved a life estate. When the deed was recorded, the attorney accompanied him to the recorder's office.

We do not find any evidence in the record supporting the finding that the deed made on July 22 was testamentary in character. In *Patterson* v. *McClenathan,* 296 Ill. 475, we said, "The law is well settled  *  *  *  that if the intended disposition of property is of a testamentary character and not to take effect in the testator's lifetime but is ambulatory until his death, such disposition is not operative unless it be declared in writing in strict conformity with the statutory enactments regulating the making of wills." We consider the deed here is not shown to be ambulatory in character, but the title was vested in the daughters immediately, subject to a life estate and to certain incumbrances. While the grantor was entitled to the enjoyment of the property during his life, the whole title except for the life estate was vested in the children. Their interest was vested immediately, but the enjoyment postponed. In the *Patterson case* just referred to, a woman desired to dispose of her property so that her imbecile husband could not participate in it after her death. She could not exclude him by will, so, when she was about to go to a hospital for an operation, she executed a deed to an individual, placed it in the hands of the grantee, and the latter, concurrent therewith, executed a declaration of trust agreeing to dispose of the property in a certain manner after her death. The grantor died. The grantee, in accordance with the escrow agreement, recorded the deed, and a suit was filed to set it aside as testamentary in character. In rejecting this contention, the court said, "If the instrument contains all the requisites

necessary to constitute a valid conveyance of real estate under our statute, and is executed, acknowledged and delivered as required by law, it is sufficient to convey the property described therein." *Young* v. *Payne,* 283 Ill. 649; *Kelly* v. *Parker,* 181 Ill. 49; *Linn* v. *Campbell,* 289 Ill. 347.

The deed in the present case was executed with all the formalities required by law and was made under the advice of an attorney who was fully aware of the requisites and differences between a deed and a will. It was not ambulatory but conveyed a present interest which could have been disposed of or sold to another party, subject, of course, to the incumbrance contained in the deed. We are of the opinion that the finding of the court that the deed of William Wolber was testamentary in character is not supported by any evidence, and must be rejected.

The court also found that the deed was not delivered. The facts recited above indicate that it was made to members of his family; that it comes within the definition of a voluntary settlement. In cases of voluntary settlement the law presumes much more in favor of the delivery of a deed than it does of ordinary transfers resulting from bargain and sale. A voluntary settlement is one where the grantee is a member of the family or near relative of the grantor, and the presumption arises in such instances that there is a delivery of the deed. *Alexander* v. *American Bible Society,* 407 Ill. 49.

The question of delivery is one of fact and must be gathered from all the surrounding circumstances established by the evidence. Courts do not attach as much importance to the manual possession of the deed as they do to the intent of the grantor as gathered from the evidence in regard to the vesting of the title. In *Zilvitis* v. *Szczudlo,* 409 Ill. 252, we said, "The matter of the delivery of a deed is not one requiring any particular formality but may be accomplished by acts without words, or words without acts, or both, and anything that clearly manifests an intention

by the grantor that the deed shall at once become operative to vest the estate in the grantee constitutes a sufficient delivery." (Citing many cases.)

The execution of the deed with the formality required by law, the consultation with an attorney at the time of making it, and the subsequent acts of the grantor recognizing the title of the grantees until he became displeased with Mrs. Miller's refusal to execute a deed at his request, all indicate beyond any doubt that he intended the deed to take effect immediately upon its execution and recording. The fact that he retained possession is not inconsistent with delivery in view of the fact that he retained a life estate and was entitled to retain the evidence of such interest during that period. The law does not make the grantor's retention of a deed, duly executed, proof of nondelivery, especially where he still retains the right of enjoyment. *Hill* v. *Kreiger,* 250 Ill. 408; *Prince* v. *Prince,* 258 Ill. 304.

Of great importance in our thinking on this subject is the long uninterrupted line of cases in this State holding that where there is a deed reserving a life estate in the grantor, there is a strong presumption that it is intended that the title should vest immediately in the remainderman, for the reason that if such intention had not existed there would be no reason for the reservation. *Hill* v. *Kreiger,* 250 Ill. 408; *Sargent* v. *Roberts,* 265 Ill. 210.

Under the facts as narrated above, we entertain no doubt but that there was an effective delivery of the deed of July 22, 1936, to the daughters of William Wolber, sufficient to vest the title in them, subject to the life estate and incumbrances thereon.

The third point remaining is whether the deed was accepted by the grantees. The fact of acceptance may be established by circumstances as well as by direct proof. In transactions between relatives where the transfer of property is regarded in the nature of a voluntary settlement, and where the deed is not in the possession of the grantees,

there arises a presumption that there has been a valid delivery, especially if the conveyance is beneficial to the grantees. We see no reason why a like presumption should not prevail here as to acceptance by the grantees if the conveyance is beneficial. However, in this case, the question of acceptance does not depend upon a presumption. We think the evidence clearly indicates an acceptance. It is true that none of the parties testified in the present case, but the evidence shows that the father sought in a variety of ways to get the signature of Mrs. Miller to a deed to transfer part of the land to effect the exchange. This she refused to execute. If she had not accepted the conveyance, why should she refuse, other than to indicate that she had accepted the benefits conferred by the deed and declined to agree to transfer part of it to acquire a different tract of land? It is also shown that when the exchange was made, the title to the land exchanged would be placed in the name of both of the daughters. Mrs. Miller exercised her privilege of declining to agree to this transaction and manifested, in as strong a manner as though by express assent, that she was accepting the benefit the deed conferred upon her as grantee. The correspondence of Wolber with his attorney denotes that he considered that she had accepted the deed and become the owner, since he says that he needed his daughter's signature to legally close the exchange with Bushman, and further says that he reached his decision to set aside the deed he made to Mrs. Miller and give it all to Mrs. Fonda. These facts strongly indicate Mrs. Miller was retaining what the deed purported to vest in her, and we know of no better proof of acceptance by circumstances than to claim the benefit of the conveyance when the title is sought to be altered. The circumstances of both the daughters having been made parties to an eminent domain proceeding, as well as the fact that they joined in an instrument dedicating a right of way for a public road, all indi-

cate that they not only knew of this conveyance to them but were acquiescing in the benefits conferred thereby.

Counsel for appellee claim that a grantee cannot be compelled to accept a deed which would not be beneficial, and the deed in the present case was not beneficial to the grantees because it was subject to a life estate, because there was a mortgage and trust deed thereon, and they eventually might become liable for the payment of taxes. The deed in this instance was made subject to the mortgage and trust deed. When a conveyance is made subject to a real-estate mortgage, it does not impose a personal obligation upon the grantee or a liability to pay off the incumbrance unless he expressly agrees to do so. (*Harley* v. *Magnolia Petroleum Co.* 378 Ill. 19; *Consolidated Coal Co.* v. *Peers,* 166 Ill. 361.) Neither is there an obligation to pay the taxes during the period of the life estate, as it is the duty of the life tenant to pay the taxes and keep the premises in repair. *Thelin* v. *Hupe,* 397 Ill. 44.

We think the proof in this case conclusively shows acceptance of the deed to real estate conveyed by Wolber to his daughters on July 22, 1936.

As a matter of fact, the brief of the appellee does not make much effort to rebut the effect of the facts and circumstances appearing in evidence in this case, establishing that the two daughters acquired the ownership of the property by the deed in question subject to the life estate and the incumbrance. Appellee claims that the conveyance did no more than transfer the equity of redemption in the premises.

It is true that a conveyance of real estate upon which there is an outstanding mortgage conveys the equity of redemption in the property. (*Boone* v. *Clark,* 129 Ill. 466.) This, however, does not affect the validity of the instant transaction, since the mortgagor is the legal owner of the mortgaged premises against all persons except the mort-

gagee and his assigns, and while a mortgage conveys title as between the mortgagor and mortgagee, it is only a qualified title as security for the creditor during the existence of the debt, and the mortgagor is regarded as the owner of the land for all beneficial purposes, subject only to the rights of the mortgagee. *Rohrer* v. *Deatherage,* 336 Ill. 450.

It is also true that while, as against everybody except the mortgagee, the mortgagor is the owner of the mortgaged premises, his title is subject to the laws of descent and conveyance, and liable to the claims of creditors. *Leonard* v. *City of Metropolis,* 278 Ill. 287; *Barrett* v. *Hinckley,* 124 Ill. 32; *Seaman* v. *Bisbee,* 163 Ill. 91.

These principles clearly disclose that while, from a legal standpoint, technically Wolber conveyed an equity of redemption, for all practical purposes he was the owner, and the payment and discharge of the mortgages by him relieved the property of its technical status as an equity of redemption, and then it became vested in the grantees, subject, of course, to the life estate. Upon the death of Wolber the grantees became entitled to possession and enjoyment of the property. The will of Wolber makes certain dispositions of claimed or supposed rights to subrogation or reimbursement for discharging the incumbrance upon the property conveyed, but since this question is not before us, we will refrain from discussing it. There is nothing, however, to the claim that a deed made subject to a mortgage deprives it of its legal character as a conveyance as claimed by appellee.

It is further argued that the will of Wolber shows that he did not intend to presently convey the property described in the deed, but this appears only from statements made many years after the conveyance had been made, at a time when he was angered at Mrs. Miller's refusal to join in the conveyance to perfect the exchange he desired. During the intervening years between 1936, when the deed was executed, and 1948, when the will was executed, there is

no act, word or circumstance which indicates that the deed was anything but what it purported to be, namely, a transfer of the land subject to the life estate and the incumbrance. Even if shown, these statements would not affect the validity of the deed. A grantor cannot, by subsequent declarations, destroy the effect of a deed executed with all the formalities of the law. *Hagan* v. *Woldo,* 168 Ill. 646; *Moore* v. *Downing,* 289 Ill. 612.

We are of the opinion that there was no competent evidence in the record to support the findings of the trial court, but, on the contrary, the evidence clearly discloses that the deed in question was delivered, and that it was accepted by the grantees and was made with the intention of presently vesting the title subject to Wolber's life estate and the incumbrances thereon. It is, therefore, our judgment, and it is so ordered, that the decree of the circuit court of Carroll County be reversed.

*Decree reversed.*