390

Hiram Calcutt, Appellee, *vs.* Charles A. Gaylord *et al.,*
Appellants.

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

EAGLE & EAGLE, of Rock Island, for appellants.

WINSTEIN & RIMMERMAN, of Rock Island, (STEWART R. WINSTEIN, and SAMUEL M. GILMAN, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

On August 1, 1951, appellee, Hiram Calcutt, filed his complaint in the circuit court of Rock Island County praying that he be declared the legal and equitable owner of certain real estate, that said realty be impressed with a trust for his benefit and appellants be ordered to convey the premises to him, or that specific performance be decreed of an oral agreement alleged to have existed between him and George B. Gaylord, deceased, wherein Gaylord promised to convey the property to appellee and his wife providing they came to live with him, furnished meals and cared for him. An answer was filed denying plaintiff was entitled to any of the relief prayed. The cause came on for hearing before the court, which decreed that a deed from George B. Gaylord to Hiram Calcutt was confirmed and established and restrained appellants from asserting any right, title, or interest in or to the premises, and ordered each of the appellants to execute and deliver a deed of and to said premises to appellee. Appellants appeal directly to this court, as a freehold is involved.

George B. Gaylord and his wife, Hattie, resided for many years in Rock Island. In July of 1949 Mrs. Gaylord passed away. Soon thereafter Mr. Gaylord invited appellee

and his wife to move into his apartment and make their home with him. Gaylord paid the rent and the Calcutts purchased the groceries and paid various household expenses. Appellee, Hiram Calcutt, was a nephew of the late Mrs. Gaylord. In August, following the death of his wife, Gaylord gave appellee and his sister, Ida Korsell, each $5000. In December of that year he gave Ida Korsell $1000 and gave $2500 to Lizzie Moulton, also a niece of Mrs. Gaylord.

In May, 1950, after receiving a notice that his rent was to be increased, Gaylord purchased the residence property at 1511 Twelfth Street in Rock Island, which is the subject of this controversy. He paid the purchase price of $10,500 and received a deed naming him as grantee. He and the Calcutts then moved into this house. During June of 1950, Gaylord went to his attorney, Leo Herbert, and signed a deed to the property, naming appellee as grantee. At the same time he executed a will which did not cover this property. The attorney, upon taking the stand, testified that Gaylord directed that the property covered by the deed was to be so conveyed that it would be no part of his estate. He also stated that he inquired of Gaylord why he did not turn the deed over to Hiram, and was informed that deceased wanted the deed to remain in his attorney's safe, saying one never knows what will happen in the future and that he wished to retain control over the deed. The deed and will remained, thereafter, in Herbert's safe until November, 1950. At that time Gaylord came to the attorney's office and asked for the deed, which he then and there destroyed. He thereupon destroyed the existing will and executed a new one. By the terms of the new will he devised this residence property in Rock Island to Ida Korsell as executrix and directed that she sell it and divide the proceeds between herself, Lizzie Moulton, and Charles Gaylord, his half brother. About the first of October, prior to the destruction of the deed, the Calcutts

and Korsells had quarrelled and Gaylord had thereby become greatly disturbed. Consequently, he had departed from the Calcutt residence and .made his home with Mr. and Mrs. Korsell. He continued to reside with Mrs. Korsell until the time of his death on January 30, 1951.

Mary E. Schnoor was one of the witnesses presented by the appellee. She was a close friend of the Gaylords for many years. She testified that Gaylord told her he wanted to buy the Calcutts a house so that he would always have a home. He told her he was going to purchase this house and leave a deed to the Calcutts with Herbert, so that when he died they could pick up the deed and the home would be theirs. She also identified plaintiff's exhibit No. 1 as a letter she and her husband received from Gaylord. In that letter he stated, "I have given them [the Calcutts] a home. * * * Now when I bought that house I thought I would have a nice home. But things changed pretty fast. * * * So all I could do was walk out."

John Wetzel, a neighbor of the Calcutts, related that Gaylord told him, when he and appellee were moving in next door, that he was buying the place for the kids, appellee and his wife. He later told witness that the place was appellee's and that he had made out two deeds which were in a safe place and if anything happened to him the other one was to be filed immediately.

Edwin Faust, also a witness and a friend of appellee and decedent, said that decedent asked him what he thought of the place he had bought the kids, and told him he had it fixed so that when he passed on all they had to do was to call the attorney and the place was theirs. He also told this witness that the furnace was no good in the house and he wanted a better furnace for the kids.

William Schnoor, husband of witness Mary Schnoor, and a friend of decedent, stated that during a visit he was told by the decedent that he was giving the house to appellee and that he had a deed executed and deposited with his

attorney which was to be turned over to appellee upon his death. In his testimony Schnoor also said that in August following the purchase of the Rock Island property, the decedent told him that he had purchased a lot in Kewanee for the Korsells and was going to help them build a house on it so he would have a home in Kewanee and in Rock Island.

Following the presentation of his case appellee dismissed count II of his complaint, which alleged a failure on the part of Gaylord to perform the covenants and conditions of their agreement, in that he failed to give, convey, or devise the property to the appellee, and requested specific performance of that agreement. He also struck all language from count I which alleged that the deed executed by decedent to appellee was done in pursuance of said agreement. While count I, as amended, does allege the making of an oral agreement between decedent and appellee, it contains no allegations of any failure of decedent or his heirs to convey the property in accordance with the conditions and covenants of the said agreement. In their answer to count I, the appellants specifically denied the delivery of the deed to Leo Herbert for the benefit of appellee. Thus, the issue was joined upon whether a valid delivery and a completed conveyance had been executed. There being no question of contract remaining in count I as amended, the sole remaining issue as to whether there was a completed conveyance was presented to the court for determination. The chancellor decreed that the deed of George B. Gaylord to Hiram Calcutt was established and confirmed. The same question is presented here on review. Determinative of the question is the resolution of whether a valid delivery to Hiram Calcutt was effected by the deposit of the deed from decedent to appellee with attorney Herbert.

The delivery of a deed is essential to the operation and validity of a conveyance. Delivery is determined by the intention of the grantor manifested by words and acts or

the circumstances surrounding the transaction. Unless the grantor intended to pass title, no delivery occurs even though there has been a manual transfer of the deed. Thus it is essential that the intention of the grantor be manifest and he surrender all control and dominion over the deed. *Alexander* v. *American Bible Society,* 407 Ill. 49.

Where a grantor delivers a deed of conveyance to a third person to be delivered to the grantee after the death of the grantor, certain questions of law and fact are presented. We have held that in such a case the effect of the delivery of the deed depends upon the intention of the grantor at the time the deed was delivered to the custodian. To be a valid and complete delivery the grantor must at that instant surrender all dominion over the deed. Where the grantor intended to part with all control over the deed, a subsequent change of his intention can have no effect upon the delivery. Where the deed is placed in the hands of a third party merely for safekeeping and as a convenient place of deposit, the deed is not validly delivered and conveys no title. *Alexander* v. *American Bible Society.*

The question of delivery is one of fact and must be gathered from all of the surrounding circumstances established by the evidence. (*Fonda* v. *Miller,* 411 Ill. 74.) The intent to deliver may be shown by direct evidence or presumed from acts and declarations of the parties, and, in like manner, presumptions of delivery may be rebutted or overcome by proof or presumption of a contrary intention. A grantee claiming under a deed not in his possession at the death of the grantor has the burden of proving delivery, and it is incumbent upon the grantee to overcome the *prima facie* case against delivery by showing the terms and conditions of the escrow and their complete performance. (*Schnepper* v. *Ashlock,* 404 Ill. 417.) The execution of the deed with the formality required by law, the consultation with an attorney at the time of making it, and the subsequent acts of the grantor recognizing the title in the

grantee, may all be considered as an indication that the grantor intended the deed to take effect immediately upon its execution, and that he delivered it with such thought in mind. *Fonda* v. *Miller*.

It is conclusively shown by the evidence presented that in June of 1950 the decedent did execute a deed to the premises naming appellee as grantee, which he deposited with his attorney. Appellee produced several witnesses who testified to numerous statements of decedent wherein he declared that he purchased this house for appellee and his wife, and that he had executed a deed to them which they need only obtain from his attorney after his death. Plaintiff's exhibit No. 1, a letter written by decedent, clearly acknowledges that he had given the home to appellee. Plaintiff offered as his exhibit No. 2 a tablet wherein decedent had listed some of the gifts he had made to various persons. Therein, under the name of Hiram Calcutt and date of May, 1950, appears an entry of $10,500 for "House and lot," indicating that he purchased the same for the appellee.

The uncontroverted testimony of William Schnoor that soon after the purchase of the subject property the decedent bought a lot in Kewanee for the Korsells and was going to help them erect a home on it, together with the evidence of the various cash gifts to Ida Korsell and Hiram Calcutt, indicates that Gaylord made an attempt to even up the gifts to appellee and his sister; all of which raises a very substantial inference that his intention in delivering the deed to his attorney was for the purpose of vesting the title to the Rock Island property in appellee.

The only evidence tending to refute appellee's contentions is the testimony of decedent's attorney, Leo Herbert. He asserts that upon delivery of the deed to him, Gaylord directed that it was not to be delivered to appellee until after his death, as he wished to retain control of it until that time. The fact that decedent did subsequently obtain

and destroy the deed and did then include the property in a new will, is some indication that he never intended to part with all control over the deed. It may also indicate merely a change of intention subsequent to the delivery, which would be of no effect. To corroborate this possibility the statement is also made by the attorney that at the time the deed was executed and placed in his hands, the decedent said that he did not want the deeded property to be a part of his estate. To hold otherwise would be to hold the deed testamentary in character and to include it as a part of his estate, (*Hudson* v. *Hudson,* 287 Ill. 286,) contrary to expressed statement of the decedent. As a result, the testimony of the attorney is contradictory and inconsistent. This may well be the reason why the chancellor in this case gave credence to the many declarations of the decedent to the effect that he purchased the property for the appellees, and that at his death all that would have to be done was for the appellee to acquire the deed from the attorney and thus become the absolute owner of said property. The mere fact that the grantor chose his own attorney as the person to hold and deliver it to the grantee at his death raises no presumption that the delivery was not valid. *Healy* v. *Stevens,* 347 Ill. 202.

The chancellor, having heard and observed all the witnesses, was best able to judge their credibility. The testimony presented by the appellee is in conflict with most of the assertions of Herbert, appellant's only witness. The chancellor chose to believe that evidence supporting the cause of the appellee. Where the evidence is in conflict, the finding of the chancellor, who saw and heard the witnesses, will not be disturbed by a reviewing court unless it is clearly against the preponderance of the evidence or unless it is apparent that error has been committed. (*Arliskas* v. *Arliskas,* 343 Ill. 112.) We cannot here say that the determination of the court that there was a valid delivery of the deed and hence a completed conveyance is against the

398

weight of the evidence. Most of the evidence presented by appellee is undisputed, whereas practically all of appellant's contentions are contradicted by some testimony presented by appellee. Appellee adequately met the burden of proving delivery, the terms and conditions of the escrow, and the completed conveyance. No error appearing upon this record, the decree of the circuit court of Rock Island County is consequently affirmed. *Decree affirmed.*