(No. 32903.—

R. L. RUSSELL, Trustee, Appellant, *vs.* CURTIS ROWAND *et al.,* Appellees.

*Opinion filed December 7, 1953—Rehearing denied Jan. 15, 1954.*

BOOKWALTER, CARTER, GUNN & HICKMAN, of Danville, for appellant.

GRAHAM, WISE & MEYER, of Danville, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This direct appeal involving a freehold comes here from the circuit court of Vermilion County, wherein, on a complaint to partition and to quiet title brought by the trustee under the last will of Benjamin Horrocks, it was decreed that the trustee, who is the appellant here, was not the owner of certain real estate described in the complaint under a devise of the last will executed on November 24, 1950, but that the appellees acquired title thereto as grantees of a deed duly executed and delivered by the testator on July 27, 1943.

There is almost a complete absence of any factual controversy. Appellees, Curtis Rowand and Wilmetta Rowand Madden, were children of the favorite blood nephew of Mary Helen Horrocks, who was married to Benjamin Horrocks in 1917, and who predeceased him by some twelve years. Benjamin and Mary Horrocks, during their marriage, adopted a child who later married and is known as Marian McDonald. Mrs. Horrocks left a will which was probated in October, 1940, dividing her real estate equally between her adopted daughter and surviving husband, Benjamin Horrocks, and the land that is the subject in controversy was thus obtained by the grantor. In addition to the land in controversy, Benjamin Horrocks received from his wife under her will a home at Punta Gordo, Florida. He also owned a life interest in a house at Henry, Illinois, and a farm near Sheffield, Illinois, where he lived alone, doing his own housekeeping as well as the labor attending the farm.

Myrtle Rowand, mother of appellees and one of the principal witnesses herein, lived at Daytona Beach, Florida, from 1941 to 1948. Wilmetta Rowand Madden also lived there a portion of that time and was present on many occasions when Horrocks, en route to and from his winter home at Punta Gordo, Florida, stopped and visited with his grandniece and her mother. The record shows that they took care of him most solicitously and tenderly. On one occasion while there he was stricken with pneumonia, but regained his health and strength through their nursing and care. His visits there were regular and his stays frequently prolonged.

In the summer of 1943, Myrtle Rowand and her daughter came north to visit in Illinois and while in Danville visited in the home of Mrs. Zelda Roderick. On the morning of July 27, 1943, Horrocks came to the Roderick home and asked for Myrtle Rowand and Wilmetta, stating that he wanted to talk to them. He had traveled that morning by automobile, unattended, a distance of 175 miles and his coming was not prearranged.

The following circumstances intimately relate to the transaction that is under scrutiny here. Mrs. Roderick testified that she heard Horrocks state to Wilmetta Madden, "I want to give you my deceased wife's interest in the land and I want to make a deed. We will have to have an attorney." Mrs. Rowand also testified on behalf of appellees that she suggested the name of Judge Steely, whereupon the three, Mrs. Rowand, Wilmetta and Horrocks went to Judge Steely's office in Danville.

Judge Harlin M. Steely, testifying for appellees, stated that he had been county judge of Vermilion County for twenty years and had practiced law continuously in Danville since 1911; that before the first visit to his office he had not been acquainted with Horrocks, but that he was well acquainted with both Mrs. Rowand and Mrs. Madden. Judge Steely testified that Horrocks expressed a desire to

deed his Vermilion County land to his deceased wife's grandnephew and grandniece—Curtis Rowand and Wilmetta Rowand Madden; that they were children of his wife's favorite nephew; that these children not only deserved to have this land by virtue of that relationship but that they had been good to him; that they had nursed and cared for him while he was in Florida, which was more than he could say about his other relatives, particularly his adopted daughter for whom Horrocks apparently entertained no parental affection, stating, "All that Marian McDonald ever wanted out of him was what she could get out of him." This attitude never changed, for, in the last will of Horrocks, she was left only $10. Judge Steely further testified that when he inquired about the consideration that should be mentioned in the deed, Horrocks agreed that it should be "one dollar and love and affection" and stated that Wilmetta and her mother had been very kind to him when he visited them in Florida and he wanted "to kinda pay them back;" and that Horrocks repeated that he wanted the land that come to him from his wife to go to her blood relatives. Upon inquiry by Judge Steely as to how he wanted the deed drawn Horrocks stated that he wanted "to keep a life estate in the land, wanted the income and the right to manage during his lifetime." It was explained to him that by so doing, he would lose all control over its ownership. Horrocks, who was addicted to free use of expletives replied: "Hell, that's what I want." When he was asked for a legal description he pulled out of his pocket a piece of white paper with the typewritten legal description. Judge Steely then dictated to his stenographer the contents of the deed, and when it was prepared, Judge Steely read aloud from the deed the description of the land while the stenographer checked its accuracy by following the typewritten memorandum. Judge Steely then placed the deed on the leaf of his desk and said, "There, Mr. Horrocks, there is the deed right there." Horrocks signed it

after reading it and said that it was just the way he wanted it. Judge Steely then said: "Now, you understand the way you are making this deed, you are parting with the possession of this farm so far as the title to it and as far as everything of that kind is concerned. You are giving it away. The only thing that you are retaining is the income and right to manage during your lifetime." Horrocks then said, "That's the way I want it." After its execution the instrument was witnessed and acknowledged by Judge Steely.

Mrs. Rowand testified that at the time of the execution of the deed Judge Steely said to Horrocks, "Remember, Mr. Horrocks, you have given this land and this deed and your title to Curtis and Wilmetta. It is their deed, it is their land, their deed and title, not yours, and you cannot do any more with it."

Judge Steely also testified that during the transaction Horrocks indicated that he would prefer that the deed not be placed on record at that time, for in doing so it would surely come to the attention of his adopted daughter. This, he explained would precipitate increased unfriendliness between him and his daughter and "she would give me hell." Whereupon, Judge Steely said this to Horrocks, "You could take it and place it in one of the banks to be delivered after your death if that is what you want." Horrocks replied, "Well, I think that would be best." Mrs. Rowand's version of what Judge Steely said at that time is, "You can deposit it in the bank or Wilmetta can deposit it in the bank." Judge Steely testified that he then placed the instrument in one of the firm's envelopes and, unsealed, handed it over to Horrocks saying, "Now, you remember what I said a while ago about giving this land away. You have parted company with it and all you have is just the rents and profits for your lifetime;" and that Horrocks took the envelope and handed it to Wilmetta Madden saying, "That's for you and Curt, that's yours." According to Mrs. Rowand the conversation was as follows: "Now,

Mr. Horrocks, you will lose all control of this land and you cannot sell it, mortgage or do anything with it," that Horrocks replied, "That's just the way I want it," and that Horrocks took the envelope and handed it to Wilmetta saying, "Here, Wilmetta, is your and Curt's deed. It's yours. I want you to have it while I live."

Wilmetta then said to Judge Steely that she hardly knew what to do about recording the deed and asked whether she should record it or put it in the bank. Judge Steely's reply was, "Wilmetta, that is your deed and your land and you can do with it as you please, do what you like, that is up to you." Judge Steely recommended that if she decided not to record the instrument that she take it down to the First National Bank trust department and leave it there to be delivered after Horrock's death. Horrocks, Mrs. Rowand and Wilmetta, with the deed in her right hand and her purse in the left, went directly from the Steely office to the trust department of the First National Bank, which is located in the basement of the same building. There they met and interviewed Marion Stine, the trust officer. Appellant and appellees have a different interpretation of what transpired on this occasion. The conclusion that we have reached in this cause renders it unnecessary to consider in detail what was said and done at that time. The deed was left with Stine and placed in an envelope and on it appears a typewritten escrow agreement, signed by Benjamin Horrocks which reads as follows: "Enclosed deed is this day deposited by the undersigned, Benjamin Horrocks of Henry, Marshall County, Illinois. Said deed is to be held by the First National Bank of Danville, Danville, Illinois, as escrow agent and shall be delivered only to myself or designated representative upon written order signed by me. In the event of my death this deed is to be delivered to either Curtis Rowand or Wilmetta Rowand Marshall, or their legal representatives. They to furnish sufficient evidence of death. It is agreed and under-

stood that the escrow charges are to be paid at the time of delivery of deed." This envelope was admitted into evidence in this cause as plaintiff's exhibit 4. Mrs. Rowand testified that when Horrocks attached his signature there was no writing above it; that there was no discussion that would justify the writing of such a memorandum; that Wilmetta told Stine: "Mr. Stine, I have a deed that Mr. Horrocks gave me, land and deed to me, and I want to deposit it here in the bank, and my brother or I will pick it up at his death." Stine testified that he had no independent recollection of the transaction, but that he was sure that Horrocks signed no instrument in blank; that the typewritten portion was there when it was signed by Horrocks, for otherwise it would be in contravention of all established practices in his department; that the instrument was in the same condition now as when Horrocks signed it; that the signature of Horrocks appearing on the envelope and on the deed to appellees were written by one and the same person. Wilmetta paid to Stine a $5 fee charged by the bank for this service.

Zelda Roderick and Mary Grimes, a neighbor, both testifying, related conversations that they had with Horrocks in the afternoon of July 27, 1943, after his return from Judge Steely's office. He told them he had deeded some land to Wilmetta and Curtis; that all he wanted "was the proceeds off of it during his life;" that he was glad for them to have it while he was alive and then there would be no trouble over it; that he had little regard for his adopted daughter; that "she would cheat or lie to him and take everything she could take off him;" that they had gone to Judge Steely's office; that he had given a deed to Curtis and Wilmetta; and that he wanted the land to go to the blood relatives of his wife, for he thought that his wife would like for it to stay in the family.

The envelope containing the deed remained in the custody of the bank continuously from July 27, 1943, until

the date the envelope was opened and the deed handed to Curtis Rowand, on April 13, 1951, approximately three month after Horrock's death. Thereafter, on June 4, 1951, Rowand recorded the deed.

It was in November, 1951, that appellant instituted this suit for partition, claiming an interest in the Vermilion County land as result of the residuary clause of Horrock's will, and further asserting that by virtue of Horrock's direction to the bank there was no delivery of the deed in question, and that the deed should be expunged from the records of Vermilion County and declared null and void. Appellees filed a cross complaint alleging a valid delivery of the deed when it was executed on July 27, 1943, it being their contention that the deed in question was unqualifiedly and effectively delivered in the office of Judge Steely on that date. On the other hand, it is argued by appellant that the transaction only started in the office of Judge Steely and was completed shortly thereafter in the trust department of the First National Bank when Horrocks executed the escrow agreement appearing on plaintiff's exhibit 4. Appellant urges that the entire transaction merges into the deed and the written escrow agreement and that all testimony contradicting its terms was inadmissible.

The cause was heard by the chancellor without a jury and in a written opinion he held that it was unnecessary to consider the effect of the escrow deposit agreement because there had been a complete passing of title in the office of Judge Steely. On this basis he dismissed the complaint for want of equity. We are of the view that the record demonstrates that Horrocks, when he presented the deed to appellee, Wilmetta Madden, thoroughly understood what he was doing and intended to place the instrument irrevocably beyond his control. We are convinced that the trial judge, in his position of advantage in seeing and hearing the witnesses, was correct in his determination that the deed was completely and effectively delivered in the office of Judge

Steely at the time of its execution and acknowledgment. The principles of law underlying the determination as to what constitutes a valid and effective delivery of a deed may be found in *Calcutt v. Gaylord,* 415 Ill. 390; *Klouda v. Pechousek,* 414 Ill. 75; *Fonda v. Miller,* 411 Ill. 74; *Dunn v. Heasley,* 375 Ill. 43; *Payne v. Henderson,* 340 Ill. 160; *Short v. Short,* 409 Ill. 142. Giving consideration to those authorities and to the undisputed evidence appearing in the record and having in mind that the chancellor's findings should not be disturbed unless palpably wrong, we reach the conclusion that the attack herein made upon appellee's right to the land in question is without legal merit.

A recapitulation of the undisputed evidence may be appropriate. Appellees had been very kind to Horrocks for many years, and it was only natural that he should choose to favor them. Another incentive for making the conveyance lies in the fact that the land in question came from his deceased wife, Mary Horrocks. Curt and Wilmetta were children of her favorite nephew and, as Horrocks repeatedly said, he knew that it was only fair that some of his wife's land should go to her blood relatives. By the last will and testament of Horrocks his entire estate of $100,000 was left to four charitable institutions located in Princeton, Illinois, his adopted daughter receiving only $10. Having no interest in his only heir and desiring to favor blood relatives of his wife, the only people who had exhibited any affection for and interest in him, he drove 175 miles one hot summer day in July, 1943, to Danville, Illinois, for the sole purpose of giving the land in question to Curtis Rowand and his sister, Wilmetta Rowand Madden. His visit was unscheduled and he came prepared, for he had in his pocket a typewritten description of the land. The deed was prepared, witnessed and acknowledged by Judge Steely, a lawyer since 1911 and a county judge of long service. No doubt his testimony, which was minute and comprehensive, was most convincing. The trial judge

was in an excellent position to properly appraise its credibility. When Horrocks handed the deed to Wilmetta he said without reservation, "Here, Wilmetta, this is for you and Curt," and, when Judge Steely said to Wilmetta, "Well, Wilmetta, it's your deed, do what you want to with it," Horrocks was there and said nothing to the contrary. The undisputed evidence clearly indicates that the only purpose of the three in going to the First National Bank trust department was to leave the deed for safekeeping until Horrock's death. This would gratify Horrocks' express desire that the deed not be recorded, otherwise his disagreeable adopted daughter would become worse. It is significant to observe that Wilmetta paid the $5 fee for the bank's service in keeping her deed. Completely disinterested witnesses, Mrs. Roderick and Mrs. Grimes, testified to conversations with Horrocks wherein he indicated his purpose in coming to Danville and that he had accomplished that by deeding to appellees the land in question.

Thus concluding that the deed was validly delivered to appellees in Judge Steely's office, we deem it unnecessary to consider the conflict in the claims of the parties hereto as to what was said and done with relation to execution of the escrow memorandum in the First National Bank trust department. If Horrocks had changed his mind while en route to the bank and would have destroyed the deed in question, his action in doing so would have been entirely ineffective. The most recent case giving consideration to a legal problem somewhat analogous to the one before us is *Calcutt* v. *Gaylord*, 415 Ill. 390. There Gaylord went to his attorney in June, 1950, and signed a deed to his home, naming Hiram Calcutt, a nephew of the late Mrs. Gaylord, as grantee. The grantor and Calcutt lived together in the home. At the time Gaylord executed the deed, he made a will, in which he made no disposition of the property described in the deed. He left the deed and will with his attorney. Gaylord then became dissatisfied with the Cal-

cutts and changed his mind about giving them the property in question. In November, 1950, Gaylord went to his attorney and requested the deed and destroyed it, and at the same time made a new will embracing that property. The trial court held that there had been a complete delivery of the deed to Calcutt, and, in affirming that finding, this court said, at page 395: "Where the grantor intended to part with all control over the deed, a subsequent change of his intention can have no effect upon the delivery." Appellant argues that the *Gaylord case* has no application to the instant problem, because there was no escrow agreement involved therein. This suggested distinguishing feature is not persuasive. Horrocks had parted with all control over the deed by which he conveyed to appellees, and whatever he did, whether it be a destruction of the instrument, or the signing of a written memorandum as appears on plaintiff's exhibit 4, it would not militate against the legal efficacy of the deed.

We concur with the trial court in his determination that the complaint filed herein is without merit.

*Decree affirmed.*