NEIL COLE, Indiv. and as Ex'r of the Estate of Paul C. Zimmerman, Deceased, Plaintiff-Appellee, v. DOROTHY GUY, Personal Representative of the Estate of Clifton Harper, Deceased, *et al.*, Defendants-Appellants.

First District (1st Division) No. 1—88—1408

Opinion filed May 22, 1989.

Andrew J. Creighton and Allen D. Freidman, both of Chicago, for appellants.

Zaban, Jacobs & Mayer, of Chicago (Marc S. Mayer and Alan Jacobs, of counsel), for appellee.

JUSTICE QUINLAN* delivered the opinion of the court:

Plaintiff, Neil Cole, brought an action individually and as executor of his deceased brother's estate in the chancery division of the circuit court of Cook County, seeking to quiet title to certain real estate. Cole claimed that he and his brother had purchased the real estate in 1974 from Clifton and Pearl Harper. Defendants, the heirs of Clifton and Pearl Harper, counterclaimed for possession of the real estate and for an accounting. Following a bench trial, the circuit court entered judgment for plaintiff. Defendants then appealed that judgment to this court. We now affirm.

_____
*Justice Quinlan participated in this decision prior to his assignment to the sixth division.

The real estate at issue in this case is located at 1707 and 1709 N. Dayton in Chicago (Dayton properties). Plaintiff alleged in count I of his second amended complaint that Clifton and Pearl Harper purchased the Dayton properties in 1971 as joint tenants and then sold the properties sometime in 1974 to plaintiff and his brother, Paul Zimmerman, for $10,000. The complaint stated that plaintiff and his brother received a warranty deed to the Dayton properties from the Harpers, but never recorded the deed and that the deed had been subsequently lost. Plaintiff also alleged that he and his brother, doing business together as Imperial Properties, paid all real estate taxes and insurance on the Dayton properties since 1974 and made various improvements to the properties during that time. Plaintiff further stated in count I of his second amended complaint that he and his brother had been in actual, open possession of the Dayton properties since 1974 and cited section 13—109 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 13—709) as part of his assertions. Section 13—109 provides that one who is in actual possession of land under claim and color of title for seven successive years, and who has paid all taxes assessed on that land for seven successive years, shall be held to be the legal owner of the land to the extent and according to the purport of his paper title. (Ill. Rev. Stat. 1987, ch. 110, par. 13—109.) Finally, plaintiff concluded his contentions in count I by asking the court to decree that he, individually and as executor of Paul Zimmerman's estate, was the true and rightful owner of the Dayton properties, and to grant any other relief that the court deemed just.

Count II of plaintiff's second amended complaint again alleged that plaintiff and his brother had paid all real estate taxes and insurance on the Dayton properties and had paid for improvements on the Dayton properties, and that they had done so under a good-faith belief that they were the rightful owners of the properties. Plaintiff asserted that these expenditures would unjustly enrich the defendants if the court ruled that plaintiff was not the rightful owner of the properties. Therefore, the plaintiff requested as an alternative form of relief that if the court determined the defendants to be the true and rightful owners of the property, plaintiff be granted judgment against the defendants in the amount that he and his brother had expended for real estate taxes, insurance payments and improvements to the properties.

The defendants filed an answer and also a counterclaim, which requested possession of the Dayton properties and an accounting for all the rents collected on the properties. Thereafter, the case proceeded

to trial, which was heard by the trial court without a jury.

The plaintiff presented Morton Zaslavsky, an attorney, as one of his witnesses. Zaslavsky testified that Clifton Harper told him in October 1974 that he, Harper, wanted to sell the Dayton properties for $10,000. Zaslavsky mentioned the proposed sale to plaintiff and Zimmerman, who decided to purchase the properties. Zaslavsky then handled the legal aspects of the transaction for the parties.

Zaslavsky testified that he could not remember all the details of the transaction and could not locate anything in his files related to this transaction. The details that Zaslavsky specifically remembered were that plaintiff gave him a certified check for $10,000, which he then gave to the Harpers, that the title to the Dayton properties was put in plaintiff's name only, and that he delivered the deed to plaintiff and Zimmerman, even though his usual procedure would have been to record the deed himself. Zaslavsky also testified that plaintiff and Zimmerman might not have recorded their deed in order to avoid receiving housing court citations. Zaslavsky explained that the practice in the neighborhood at the time when this transaction took place was to leave the former owner's name on the deed when buying an owner-occupied building, because city building inspectors usually did not cite owner-occupiers for housing violations.

Plaintiff also testified in the case. He said that in October 1974, Zaslavsky told him about some property that was for sale for $10,000. Plaintiff and his brother, Zimmerman, decided to purchase the properties and, therefore, took a certified check for $10,000 to Zaslavsky's office. The plaintiff and Zimmerman signed some documents, and in return they received the deed to the properties. After receiving the deed, plaintiff said that he and Zimmerman began performing repairs on the properties.

Plaintiff also stated that the deed to the Dayton properties was never recorded because he and Zimmerman wanted to correct some building code violations first and did not want to receive any citations before they could make the corrections. Plaintiff said that he had tried to obtain a copy of the certified check that had been given to the Harpers, but the bank informed him that it did not keep checks for more than seven years. In addition, the plaintiff testified that he was completely unaware of any problems regarding ownership of the Dayton properties until his brother died in 1986.

Reanna Smith, a tenant of 1707 N. Dayton since 1972, also testified for plaintiff. She said that Clifton Harper was her landlord from 1972 until October 1974, when Harper informed her that he had sold the building to plaintiff and Zimmerman. Following this conversation

with Harper, Smith never again paid rent to Harper and instead paid the rent each month to plaintiff and Zimmerman. Smith also said that she had never seen any of the defendants at the building, nor had she ever paid any rent to them.

Plaintiff next called Dorothy Guy, the daughter of Clifton and Pearl Harper and a defendant in this case, as an adverse witness. She testified that her parents moved to Kentucky around November 1974 and purchased a home, which they paid for with cash. Her parents both died in Kentucky without ever returning to Chicago. Mrs. Guy said that she was appointed administrator of her father's estate and also admitted that when she filed the inventory of his assets on January 24, 1986, she had said it was "a full true and complete inventory," and she had not listed the Dayton properties in that inventory. In addition, Mrs. Guy stated that when she signed the final settlement for her father's estate, she did not mention the Dayton properties in that settlement. She also testified that she had never discussed what had happened to the Dayton properties with her father and admitted that she never took any action regarding the properties after her father died, even though she had claimed in her answer to one of plaintiff's interrogatories that Clifton told her in 1984 or 1985 that he still owned the Dayton properties and that he still had the deed to the properties. Finally, Mrs. Guy testified that she had never paid real estate taxes or insurance on the Dayton properties and also had never done any maintenance to the properties or collected any rent from the tenants of the properties.

Larry Guy, Dorothy Guy's son, was then subpoenaed by plaintiff to testify concerning an out-of-court statement that he had made. Larry Guy testified that he had, in fact, said that his father Roy told him that Clifton Harper had sold the Dayton properties for $18,000. However, Guy claimed that his father had actually been referring to his aunt's house in Kentucky and he had mistakenly thought that his father was referring to the Dayton properties.

The plaintiff also presented evidence that Zaslavsky had ordered a title commitment on the Dayton properties on October 17, 1974, which named plaintiff as the proposed insured. He introduced into evidence the tax bills and receipts for the Dayton properties, the cancelled checks and check stubs for the payments related to the Dayton properties, and a rent receipt book which included rents received from the Dayton properties. Furthermore, the plaintiff proffered insurance policies that he and Zimmerman had purchased on the Dayton properties which named himself and Zimmerman as the insureds. Finally, plaintiff introduced his tax returns from 1973 to 1986, which

showed that he claimed a deduction on his income tax for depreciation on the Dayton properties beginning in 1974.

The defendants moved for a directed verdict at the close of plaintiff's case. The trial court denied the motion. The defendants then recalled Dorothy Guy. Mrs. Guy, testifying on her own behalf, claimed that her father never said that he sold the Dayton properties. Mrs. Guy said her father gave her some personal papers, including a deed to the Dayton properties, in October 1985. She testified that she put the papers in a folder and then put the folder away in a chest and did not look at them again until the plaintiff's attorney telephoned her regarding this lawsuit. She claimed the reason that she never looked in the folder was because she was very busy after her father died.

At the close of all the testimony, the trial court ruled for plaintiff, finding that plaintiff had proved his case by clear and convincing evidence. The court said that the evidence, in its view, supported a conclusion that plaintiff and Zimmerman purchased the Dayton properties and received the deed to the properties, but had failed to record the deed and then subsequently lost it.

On appeal, the defendants initially contend that judgment was erroneously entered in favor of plaintiff because plaintiff failed to prove that he had color of title which, the defendants say, the plaintiff was required to prove because his cause of action was a statutory cause of action under section 13—109 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 13—109.) This statutory cause of action, defendants continue, required that there be some paper evidence purporting to convey title in order for the plaintiff's action to succeed. The action here should have failed, the defendants assert, because the plaintiff admitted he had no paper evidence of title.

On the other hand, the plaintiff denies that the action here was a statutory action at all and, thus, he asserts that the failure to demonstrate paper evidence of color of title was irrelevant to the judgment in his favor. The allegations in his complaint concerning the statute were, he contends, merely superfluous and not necessary to the cause of action. Accordingly, plaintiff argues that those allegations can be disregarded, because his complaint set forth a valid cause of action to quiet title, which does not require paper evidence of color of title.

■ Courts will construe pleadings liberally when determining whether a complaint is adequate, in order to do substantial justice between the parties. (*People ex rel. Scott v. College Hills Corp.* (1982), 91 Ill. 2d 138, 145, 435 N.E.2d 463, 466.) If a complaint contains allegations that are not necessary to the plaintiff's cause of action, a court will treat those allegations as mere surplusage, which does not

destroy the sufficiency of the plaintiff's complaint. (*In re Estate of Lipchik* (1975), 27 Ill. App. 3d 331, 334, 326 N.E.2d 464, 466; *Taylor v. Hughes* (1958), 17 Ill. App. 2d 138, 146, 149 N.E.2d 393, 397.) Moreover, following a trial and verdict, a reviewing court will attempt to construe a pleading as sufficient to state a cause of action, rather than as failing to allege a cause of action. *McBreen v. Iceco, Inc.* (1956), 12 Ill. App. 2d 372, 380, 139 N.E.2d 845, 849.

 Construing the pleadings in this case liberally, as we must, we find that plaintiff's complaint did not allege a statutory cause of action, but set forth sufficient allegations of an action to quiet title. Although plaintiff did cite to section 13—109 of the Illinois Code of Civil Procedure in his complaint, we believe this section of the complaint was mere surplusage, which this court can simply disregard. We find that the remainder of plaintiff's complaint alleged sufficient facts in support of an action to quiet title and, consequently, the plaintiff's failure to prove color of title was, as plaintiff argued, irrelevant to the trial court's verdict.

Interrelated to this issue, the defendants allege in their second argument on appeal that since the plaintiff failed to prove color of title, which the defendants, as stated, claimed was the only cause of action set forth in plaintiff's complaint, the trial court erroneously entered judgment for plaintiff on a theory not contained in the pleadings. Defendants assert that the plaintiff in effect attempted to amend his complaint during closing argument since he had conceded in his argument that there was no color of title in this case, but nonetheless continued to claim that his pleadings were still valid. Conversely, the plaintiff argues that there was no new or amended theory and that his theory of the case was clearly set forth in the pleadings as an action to quiet title.

 Inasmuch as we have found that plaintiff's reference to color of title in his complaint was mere surplusage and that the complaint stated a valid action to quiet title, we do not find that the trial court entered judgment for plaintiff based on a theory not contained in the pleadings. The allegations of a complaint are sufficient to state a cause of action if they reasonably inform the opposite party of the claim against him. (*College Hills Corp.*, 91 Ill. 2d at 145, 435 N.E.2d at 467; *Estate of Lipchik*, 27 Ill. App. 3d at 334, 326 N.E.2d at 467.) Plaintiff's complaint here clearly set forth sufficient facts to appraise the defendants of the case against them. The heading of the plaintiff's complaint said that it was a complaint "To Quiet Title to Real Estate." The complaint then alleged that the plaintiff and Zimmerman purchased the Dayton properties for $10,000 from the Harpers, paid

all expenses on the properties from the time they purchased the properties, lost the deed to the properties, and then concluded the allegations by requesting that the court declare plaintiff the rightful owner of the properties. Such allegations are sufficient to state a cause of action to quiet title and, therefore, the trial court properly entered judgment for plaintiff based on that cause of action.

In the defendants' third issue on appeal, they argue that the trial court's ruling for plaintiff was not supported by clear and convincing evidence. Specifically, the defendants contend that there was no evidence that a closing took place, no evidence of payment, and no evidence of the elements of the deed since none of the parties could recall who was named grantee in the deed.

In response, plaintiff concedes that one who claims under a lost deed must prove its existence by clear and convincing evidence, but argues that the evidence here overwhelmingly proved that he was the rightful owner of the Dayton properties. Plaintiff asserts that he provided adequate evidence of the contents, execution and delivery of the deed, as well as evidence of payment. Furthermore, plaintiff contends that the actions of the parties here following the alleged sale were also consistent with a finding that he and his brother did, in fact, purchase the properties from the Harpers.

■ The mere loss of a deed following execution and delivery will not deprive a party of title if that party offers evidence of the execution, delivery and loss of the deed. (*Chicago Housing Authority v. Cooper* (1958), 19 Ill. App. 2d 441, 445, 154 N.E.2d 308, 310-11.) Further, the question of whether there was delivery of the lost deed is a question of fact which may be shown by direct evidence or may be inferred from the acts and declarations of the parties. (*Calcutt v. Gaylord* (1953), 415 Ill. 390, 395, 114 N.E.2d 340, 343.) In addition, the trial court is in the best position to assess the credibility of witnesses when the testimony in a case is conflicting, and its ruling in such a case should not be disturbed on appeal unless it is against the manifest weight of the evidence. *Scheduling Corp. v. Massello* (1987), 151 Ill. App. 3d 565, 503 N.E.2d 806, 810; *In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 28, 500 N.E.2d 612, 616.

■ In this case, the trial court found that there was clear and convincing evidence that the deed to the Dayton properties was executed, delivered and then lost by the plaintiff and Zimmerman, and further found that the defendants failed to offer any evidence to the contrary. We do not believe this ruling was against the manifest weight of the evidence. There was testimony in the case concerning the contents, execution, delivery and consideration for the deed. The

evidence supported the trial court's findings that the plaintiff and Zimmerman did not record their deed so that it would appear that the Dayton properties were still owner-occupied; it was unlikely that the plaintiff and Zimmerman fraudulently claimed ownership of the properties here, since they depreciated the properties on their income tax returns and risked Federal penalties if they had been depreciating property that they did not own; the plaintiff and Zimmerman would not have paid all taxes on the properties, all the insurance for the properties, and also named themselves as the insured parties on the policies if they did not own the properties. Finally, the evidence clearly supported the trial court's finding that Mrs. Guy's failure to take any action regarding the Dayton properties following Clifton Harper's death was inconsistent with her claim that her father retained ownership of the properties. Hence, although there were inconsistencies in the testimony of the witnesses and gaps in their recollection, we agree with the trial court that these inconsistencies did not destroy the credibility of the witnesses and were not sufficiently material to negate the plaintiff's clear and convincing proof of ownership.

Defendants next contend that the trial court's ruling was erroneous because it was contrary to the equitable doctrine of "unclean hands." Defendants claim that the trial court should have applied the "unclean hands" doctrine because plaintiff's reason for not recording the deed to the Dayton properties, *viz.*, to avoid housing court, was unlawful. Plaintiff admits that his reason for not recording the deed was wrong, but argues that the "unclean hands" doctrine did not apply in this case because his conduct in not recording the deed was unrelated to the present action.

The purpose of the "unclean hands" doctrine is to protect courts of equity from assisting litigants in accomplishing their fraudulent or unlawful purposes, and not to protect the party raising the doctrine as a defense. (*Carlyle v. Jaskiewicz* (1984), 124 Ill. App. 3d 487, 498, 464 N.E.2d 751, 759.) Courts do not favor the doctrine and apply it solely as a matter of discretion. (*Carlyle*, 124 Ill. App. 3d at 498, 464 N.E.2d at 760.) The doctrine was not intended to prevent courts of equity from doing justice between the parties in a particular case. (*Carlyle*, 124 Ill. App. 3d at 498, 464 N.E.2d at 759-60.) Thus, a court requires that the "unclean hands" conduct must have been directed at the party raising the doctrine as a defense and must have involved the very transaction at issue before the court. *Carlyle*, 124 Ill. App. 3d at 498, 464 N.E.2d at 759.

Here, we agree with plaintiff that the "unclean hands" doc-

trine did not apply in this case because the alleged conduct was not directed at the defendants or even at the Harpers, but was directed towards avoiding housing court citations. Furthermore, the plaintiff's alleged fraudulent failure to record the deed was, in any event, a separate transaction from the transaction between plaintiff, Zimmerman and the Harpers. Hence, we find that, under these circumstances, the trial court did not abuse its discretion when it did not apply the doctrine of "unclean hands."

■ Lastly, defendants claim that the trial court erroneously admitted and relied upon certain evidence. First, defendants claim that the court erroneously admitted Larry Guy's testimony regarding his conversation with his father because this testimony violated the hearsay rule. Second, defendants claim that the trial court erroneously admitted and relied upon plaintiff's tax returns because the returns were hearsay and also were not probative of ownership of the Dayton properties.

An error in the exclusion or admission of evidence does not warrant a reversal when there is no prejudice or when the result in the case is the only result warranted by the rest of the evidence in the case. (*Ford v. City of Chicago* (1985), 132 Ill. App. 3d 408, 414, 476 N.E.2d 1232, 1237; *Atkins v. Thapedi* (1988), 166 Ill. App. 3d 471, 477, 519 N.E.2d 1073, 1077.) The party seeking reversal has the burden of establishing prejudice. (*Atkins*, 132 Ill. App. 3d at 477, 519 N.E.2d at 1077.) Here, the evidence overwhelmingly supported plaintiff's claim of ownership. Further, defendants did not allege any facts to show how the admission of the evidence prejudiced them. The result that the trial court reached in this case would have been the same with or without the objected-to evidence in the trial court. Therefore, even if the trial court improperly admitted the evidence here, we find its admission was harmless error at most and does not warrant reversal.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MANNING, P.J., and O'CONNOR, J., concur.